[No. F013310. Fifth Dist. May 6, 1991.]

In re the Marriage of MELANIE JO and GARY L CARLSON.
GARY L. CARLSON, Respondent, v.
MELANIE JO CARLSON, Appellant.

COUNSEL

Oren & Oren, Donald E. Oren and Charles D. Oren for Appellant.

Gilmore & Hancock, Robert G. Gilmore and James F. Tritt for Respondent.

OPINION

DIBIASO, Acting P. J.—Appellant Melanie Jo Carlson challenges a provision of a child custody and visitation order prohibiting her or respondent Gary L. Carlson from moving the minor children of their marriage outside of California without the prior written consent of the other party or further court order. Mother was awarded physical custody of the children. The restriction derailed her plan to relocate with the children to Pennsylvania. Appellant contends the injunction was an abuse of the court's discretion and a violation of her constitutional right to travel.

We will affirm. In part, we will conclude that a noncustodial parent's loss of the practical ability to exercise visitation is relevant in deciding whether a custodial parent should be restrained from moving a child to a different geographical area.

## Statement of the Case and Facts

The parties met and married in 1979 while they were in the United States Navy. They were subsequently stationed in San Diego where they remained until the Navy discharged them in late 1982. Their first child, Gary Matthew, was born on April 27, 1981. Upon their discharge, the parties moved to Pennsylvania. Their second child, Melary Elizabeth, was born on April 28, 1983.

The father held several jobs in Pennsylvania until mid-1984, when he became unemployed. In July 1985, the father, by the parties' mutual agreement, moved to California to obtain work. The mother and children joined him in October 1985, and the family established a residence in Madera. The father's parents lived in Fresno. The father was the family's sole support until the parties separated in August 1987. He held several different jobs, primarily in private security. He also successfully completed a course of studies at the Fresno Police Academy. The father, however, was unemployed at the time of the custody hearing which is the subject of this appeal.

After the father filed the instant petition for marital dissolution, the mother made known her intention to move with the children to Pennsylvania. Mother grew up in that state and her family resided there. She desired the emotional support of her parents, who could also help her care for the children while she attended college in Pennsylvania. The mother aspired to obtain a degree in counseling, a goal which would take six years to achieve. This triggered a pendente lite order, based on a stipulation, enjoining either party from removing the children from California. The parents also agreed to share joint legal custody of the children, with the mother to have physical custody and the father reasonable visitation.

The court dissolved the marriage in October 1988 but reserved jurisdiction on all other issues. In September 1989, the parties went to trial on the reserved issue of child custody and visitation. The only significant issue was whether the mother should be allowed to relocate with the children to Pennsylvania.

In this regard, the court determined that both parties proved to be kind, capable and loving parents, and each enjoyed a close relationship with the children. Since the date of separation, the father had maintained continuous and regular contact, both in person and over the telephone, with the children. Noting the mother was also unemployed as of the time of the hearing, the court concluded the parties did not have "the financial wherewithal to insure the contacts necessary between [the father] and the minor children so

as to cultivate, insure and continue the present relationship between [the father] and the minor children." In part, the superior court found:

"[It is] in the best interests of the minor children to remain in the State of California to insure continued contact with and guidance from Petitioner/Father.

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"29. The court finds that Respondent/Mother can obtain the desired education in California and that she has no compelling reason to go to Pennsylvania except for the emotional support she would derive from contact with her mother and father.

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"31. The court further finds that such lack of contact between the minor children and Petitioner/Father for such a length of time is not a healthy environment for the minor children to be raised in [] and would result in substantial harm to them given the close relationship between the minor children and the petitioner/father."

Accordingly, the court entered an order prohibiting each parent from taking the children out of California without the prior consent of the other or court approval. In addition, it ordered joint legal custody and awarded the mother primary physical custody with specific visitation rights to the father.

## DISCUSSION

### I. IMPAIRMENT OF VISITATION

The mother contends the trial court's restraining order was an abuse of discretion because the father failed to prove either (1) the move would jeopardize the children's health, safety, or education, or (2) the move was motivated by mother's desire to frustrate the father's visitation rights. In her estimation, the trial court did not enforce her absolute right to move the children. ■ According to her, the court impermissibly focused on the practical limitations which the move would likely place upon the father's ability to exercise visitation. She claims the impairment of the father's visitation and his consequent loss of contact with the children were insufficient as a matter of law to justify the order.

Many appellate cases decided before 1980 support mother's position. Relying for the most part on Civil Code section 213,[1] they permitted the custodial parent to move a child to a different vicinity unless there was proof the move would be harmful to the child. Apparently the child's loss of contact with the noncustodial parent was not considered detrimental to the child, for these courts deemed the practical deprivation of the noncustodial parent's visitation to be " 'generally' insufficient to justify a restraint on the [custodial parent's] free movement." (*In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 261]; see also *Walker* v. *Superior Court* (1966) 246 Cal.App.2d 749, 753-755 [55 Cal.Rptr. 114]; *Forslund* v. *Forslund* (1964) 225 Cal.App.2d 476, 494 [37 Cal.Rptr. 489]; *Milne* v. *Goldstein* (1961) 194 Cal.App.2d 552, 556-557 [15 Cal.Rptr. 243]; *Stack* v. *Stack* (1961) 189 Cal.App.2d 357, 366 [11 Cal.Rptr. 177]; *Dozier* v. *Dozier* (1959) 167 Cal.App.2d 714, 719 [334 P.2d 957]; *Shea* v. *Shea* (1950) 100 Cal.App.2d 60, 63 [223 P.2d 32]; *Heinz* v. *Heinz* (1945) 68 Cal.App.2d 713, 715 [157 P.2d 660].) Under an exception to this rule, remedies were provided when removal was shown to be a vindictive act by the custodial parent calculated to deprive the noncustodial parent of visitation privileges. (*In re Marriage of Ciganovich, supra,* at p. 293.)

By contrast, in its few decisions evaluating family law orders which geographically restricted a minor's movement, the Supreme Court has employed solely a best interests analysis. It has not relied upon section 213 nor imposed an evidentiary burden upon the noncustodial parent to prove detriment. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 208-209 [259 P.2d 656]; *Gantner* v. *Gantner* (1952) 39 Cal.2d 272, 280 [246 P.2d 923]; *Clarke* v. *Clarke* (1950) 35 Cal.2d 259, 262 [217 P.2d 401].)

We see no need to conduct a painstaking review of the pre-1980 cases. Regardless of the source or justification for their holdings, the Legislature has overridden them. In 1979, section 4600 was amended to expressly declare it to be the policy of California "to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and to encourage parents to share the rights and responsibilities of child rearing." (§ 4600, subd. (a).) In addition, in 1988 the Legislature added subdivision (m) to section 4600.5. It empowers the court to require notice to the noncustodial parent of the custodial parent's intent to change the child's residence. The notice must be given at

---

[1] All statutory references hereafter are to the Civil Code.
Section 213 provides:
"A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper Court to restrain a removal which would prejudice the rights or welfare of the child."

least 45 days before the move takes place "so as to allow time for mediation of a new agreement concerning custody." (§ 4600.5, subd. (m).)[2]

The obvious purpose behind these statutory changes is to insure that every reasonable effort, under the circumstances of each case, will be made to preserve the child's relationship with both parents. (See Hogoboom & King, Cal. Practice Guide: Family Law 1 (Rutter 1991) § 7:94, rev. #1, 1991; *Speelman* v. *Superior Court* (1983) 152 Cal.App.3d 124, 131 [199 Cal.Rptr. 784].) Section 4600.5, subdivision (m) appears to codify earlier cases which held that, in an appropriate situation, an increase in the distance between the child and the noncustodial parent will authorize an alteration in the terms of custody or visitation. For example, visitation may be modified to reflect practical realities when a noncustodial parent moves to a new location. (*In re Marriage of Murga* (1980) 103 Cal.App.3d 498, 502-503 [163 Cal.Rptr. 79].) Also, a move by a custodial parent may constitute a "significant change in circumstances" which justifies a transfer of custody to the noncustodial parent. (*In re Marriage of Rosson* (1988) 178 Cal.App.3d 1094, 1102 [224 Cal.Rptr. 250].)

We cannot disregard the effect and importance of the Legislature's modifications to sections 4600 and 4600.5. The new provisions manifest a legislative determination that "regular and continuing contact" is in the best interests of the child. (See *In re Marriage of Murga, supra*, 103 Cal.App.3d at pp. 502-503.) A rule declaring the noncustodial parent's practical inability to maintain effective contact with the child to be irrelevant would annul this public policy. Accordingly, we hold: (1) the trial court did not err when it considered the effect the mother's contemplated move would have on the father's exercise of visitation; and (2) the father, as a noncustodial parent, did not have an affirmative burden to prove the move would be detrimental to the children in order to obtain the restraining order. (Cf. *In re Marriage of Rosson, supra*, 178 Cal.App.3d at p. 1102.) By doing so, we do not make the noncustodial parent's ability to exercise visitation the sole or preeminent factor in cases such as this. We do, however, call attention to it as one of the significant considerations the trial court must take into account in evaluating the best interests of the child in light of all the evidence before the court.

Section 213 is not inconsistent with this determination.[3] It specifically authorizes a court to impede a custodial parent's right to determine the

---

[2] The provisions apply to orders entered after January 1, 1989.

[3] One appellate decision is of the opinion the provision does not have any "direct application to divorce and should not be held controlling in the face of a divorce decree which specifies what the future relationship shall be in the given instance. . . ." (*Rosin* v. *Superior Court* (1960) 181 Cal.App.2d 486, 497 [5 Cal.Rptr. 421].)

child's residence by an order "restrain[ing] a removal which would prejudice the rights or welfare of the child." Section 4600 identifies continuing contact with both parents as a constituent element of the child's best interests. (Cf. *In re Marriage of Rosson, supra,* 178 Cal.App.3d at p. 1102; *In re Marriage of Murga, supra,* 103 Cal.App.3d at p. 504.) A restraining order issued to preserve such contact, because it advances the child's welfare in the circumstances, falls directly within the authority extended by section 213.

The recent modifications to sections 4600 and 4600.5 reflect the Legislature's clear desire to preserve the link between both parents and the child as an important concern of dissolution proceedings. (See *In re Marriage of Murga, supra,* 103 Cal.App.3d at pp. 502-503.) We presume the Legislature amended these provisions with section 213 in mind. (*Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 383 [150 Cal.Rptr. 841].) We also construe statutes such as these, which relate to the same subject matter, together and harmonize them, if possible. (*Ibid.*)

## II. ABUSE OF DISCRETION

In framing a custody order, the court may consider all relevant factors, and *must* consider the child's health, safety, and welfare, any history of abuse against the child, and the nature and amount of contact with both parents. (§ 4608.) As to visitation, rights must be awarded to the appropriate parent whenever a custody order is made, "unless it is shown that visitation would be detrimental to the best interests of the child." (§ 4601.) Visitation orders must implement the statutory mandate that a child have "frequent and continuing contact" with both parents. (§ 4600.)

■ The standards of appellate review of custody and visitation orders are settled. Reversal is justified only for abuse of discretion. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 208.) The reviewing court must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling. (*Jermstad* v. *McNelis* (1989) 210 Cal.App.3d 528, 552-553 [258 Cal.Rptr. 519].) The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child. (*Ibid.*) We are required to uphold the ruling if it is correct on any basis, regardless of whether it is the ground relied upon by the trial judge. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

■ Evaluating the trial court's ruling against the relevant guidelines, we conclude the court did not abuse its discretion. There was no evidence that the best interests of the children would be promoted by the move to

Pennsylvania. At most, the facts suggested a move would be in the mother's interest by providing her with a source of emotional support. There was also no evidence her present emotional state posed any problem for the children or would be jeopardized if she could not move to Pennsylvania. She conceded her children's relationship with their father was more important than her educational pursuits and her emotional ties to her parents.

On the other hand, the evidence was undisputed that the move would substantially interfere with the children's relationship with their father. According to the existing visitation arrangement, the children saw their father at least every other weekend and sometimes during the week. The father could and in fact did visit with the children during the week on less than 24 hours' notice. He also spoke by telephone with them two or three times a week. During the summer, the children stayed with their father every other two weeks.

As the court found, both parents lacked the financial wherewithal to sustain a long-distance relationship between the children and their father of the substance they presently enjoyed. The mother was out of work at the time of the hearing. Her plan was to move in with her family and go to school. Under this scenario, she would have no income unless she continued in the naval reserve. Her in-court offer to deposit one-half of her monthly reserve pay to facilitate visitation could have legitimately been viewed by the trial court as naive, if not unrealistic. Under the circumstances, the pay would be her only source of income if she attended school full-time. Further, the father had at best a sporadic employment history and lived with his parents.

■ Trial courts have "wide discretion" in matters dealing with the custody of children in dissolution proceedings. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d at p. 208.) Orders restraining the movement of children have been issued and approved in a variety of factual situations. (See *Gudelj,* at pp. 208-209; *Clarke* v. *Clarke, supra,* 35 Cal.2d 259, 260-261.) Given all the circumstances of this case and the absence of any evidence demonstrating it was to the children's advantage to move to Pennsylvania with their mother, the trial court did not abuse its discretion by imposing the restriction.

### III. RIGHT TO TRAVEL

The mother also complains the movement restriction amounts to a violation of her federal constitutional right to travel. For the reasons which follow, we decline to resolve the issue.[4]

Mother's presentation on this topic is superficial. In essence her argument is her conclusion: the trial court's order violated her right to travel and reversal is therefore required. She neglects to address or provide any analysis or argument about such crucial issues as (1) whether in fact the restraining order constitutes a direct impairment of her ability to travel or instead is simply an indirect burden on the right (see *Attorney General of N.Y.* v. *Soto-Lopez* (1986) 476 U.S. 898, 903 [90 L.Ed.2d 899, 905-906, 106 S.Ct. 2317]); and (2) if the restriction is indirect, is it sustainable on the basis of a compelling state interest. (*Id.* at p. 906 [90 L.Ed.2d at p. 907].) A cogent argument can be made that the order in this case was not a direct restriction upon the mother, since it did not prevent her from leaving the state without the children. A serious argument can also be made that the state has a legitimate and necessary interest in the welfare of a child, especially a very young one, whose family has been split by marital dissolution. Nowhere are these issues raised or discussed by mother. Carried to its logical conclusion, mother's argument would require us to automatically declare unconstitutional all trial court orders which barred a custodial parent from moving a child interstate or, for that matter, intrastate. (See *People* v. *Beach* (1983) 147 Cal. App.3d 612, 622 [195 Cal.Rptr. 381] [constitutional right to intrastate travel].)

This court is not a partisan advocate for either party. We are not obligated to frame and urge mother's contentions for her. Her assertion the court's order constitutes a per se invalid infringement of her constitutional right is unmeritorious on its face.

*In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575 [271 Cal.Rptr. 389], cited by mother, is not controlling. There, the trial court changed a child's residence from San Mateo County where he had lived with his mother to Ventura County where his father lived, in order to facilitate the father's visitation. The trial court had relied on the father's superior economic position as the rationale for the order. The trial court acknowledged its order would force the mother to move to Ventura County or lose custody of the child. The appellate court reversed. It reasoned the relative financial conditions of the parents had nothing to do with the best interests of the

---

[4]We also do not reach the father's contention this issue was not raised below by mother and thus was not preserved for appeal.

child, and therefore reliance on such an erroneous standard was an abuse of discretion. (*Id*. at p. 1581.)

In addition, the appellate court determined there was another problem with the order:

"Courts cannot order individuals to move to and live in a community not of their choosing. To attempt to do so is inconsistent with both the federal and California Constitutions. The United States Supreme Court has inferred a right to travel from various constitutional provisions. This right also protects the right of individuals 'to migrate, resettle, find a new job, and start a new life.' [Citation.]" (*In re Marriage of Fingert, supra*, 221 Cal.App.3d at p. 1581.)

To the extent *Fingert* also found a constitutional violation, the point is arguably dicta since the court previously determined the trial court abused its discretion for a different reason. In addition, the order in the instant case did not have the practical effect of compelling the mother to either change her established residence or lose custody of the children. In any event, the mother has not demonstrated the trial court here wrongfully deprived her of a constitutional right. We will therefore not pursue the matter.

### DISPOSITION

The order appealed from is affirmed.

Vartabedian, J., and Harris, J., concurred.

A petition for a rehearing was denied May 30, 1991, and appellant's petition for review by the Supreme Court was denied August 22, 1991. Panelli, J., and Kennard, J., were of the opinion that the petition should be granted.