[No. C015402. Third Dist. Nov. 30, 1993.]

In re ROBERT L. et al., Persons Coming Under the Juvenile Court Law.
SAN JOAQUIN COUNTY DEPARTMENT OF HUMAN SERVICES,
Plaintiff and Respondent, v.
GARY L. et al., Defendants;
ROBERT L. et al., Appellants.

1058

## Counsel

Shelley Federgreen for Appellants.

John F. Cheadle, County Counsel, Steven B. Bassoff and Carol Dahle Stiles, Deputy County Counsel, for Plaintiff and Respondent.

## Opinion

DAVIS, J.—In this appeal by the minors from juvenile court orders following a disposition hearing (Welf. & Inst. Code, §§ 360, 395; further section references are to this code), we consider the appropriate standard of review to apply to orders denying placement of minors with relatives. (§ 361.3.) We shall conclude the abuse of discretion standard is appropriate in reviewing such orders. Applying that standard to the facts presented here, we hold the juvenile court's order denying placement with the minors' grandparents was an abuse of its discretion.

### Factual and Procedural Background

On December 1, 1992, section 300 petitions were filed on behalf of the minors, Robert (born Aug. 4, 1978), Rachel (born Aug. 29, 1979), and Rosalina (born Oct. 13, 1980). The petitions alleged that Gary L., the father

of the minors, physically and verbally abused all of the minors and engaged in inappropriate sexual conduct with Rachel and Rosalina. The petitions also alleged that Rosaline L., the mother of the minors, was unwilling and unable to protect the minors. After the petitions were sustained as amended, the juvenile court ordered Rachel and Rosalina placed temporarily with their paternal grandparents. At a previous hearing, the court had ordered Robert placed with his paternal grandparents.

According to the social worker's report prepared for the jurisdiction hearing, Betty Minor, the minors' paternal grandmother, stated that she had cared for the minors since they were infants. The grandmother had provided housing and clothing for the minors and arranged for their schooling and medical care. Most of the minors' clothing and personal belongings were in her home. The grandmother also stated that, even at those times when the minors were living with their parents, she still provided for their basic needs.

The report also contained statements made by the minors. Robert stated he had lived most of his life in his grandmother's home. He had lived with his parents full-time only during the last year. Rachel stated she and her sister, Rosalina, had been raised primarily by their grandparents; she had been living with her parents for approximately the past two years. Rosalina agreed with the statements made by Rachel.

In the social worker's report prepared for the disposition hearing, the parents of the minors stated they had "attempted to provide the best home they could for their children, despite the chronic and ongoing interference of [the grandmother]." According to the parents, they "always had full-time custody and control" of the minors. On the other hand, the report stated that "[a]ccording to the grandparents and the subject minors, the children actually resided in their home and only visited the parents."

The minors told the social worker they wanted to remain in the home of the paternal grandparents, whom they viewed more as parental figures than grandparents. On four occasions in which visits were scheduled between the minors and their parents, the minors refused to see their parents. Rachel and Rosalina told the social worker they did not want to visit their parents again. Robert indicated he was willing to see them in the future.

In her report, the social worker acknowledged the existence of "a serious adversarial relationship between the grandparents and the parents and that the parents perceive the paternal grandparents as "'trying to steal our children and trying to control our lives'[,] while the paternal grandparents perceive the parents as dysfunctional and unable to properly care for and provide for the minors."

The social worker concluded as follows: "It is probable that continued placement of the minors in the paternal grandparents' home would make reunification more difficult. However, should the court order out-of-home placement, the Court will need to balance this added 'difficulty' against the emotional trauma that would be imposed upon these minors should they be forced to leave the home of their paternal grandparents, which they have always stated has been their primary residence and be placed, instead in a foster home. [¶] To date, the paternal grandparents have been completely cooperative with this worker and with Child Protective Services. They have brought the minors to court hearings; they have brought the minors to visitations without argument; they have met with the social worker and others on behalf of the minors; they have made arrangements for the children's schooling; and they have, in every way, demonstrated their willingness to do whatever is asked of them. Whatever problems the paternal grandparents may have had in the past regarding their inter-relationships with neighbors, friends, and others, no one, not even the parents, have [*sic*] relayed any information to this social worker that would indicate that the paternal grandparents have not provided a safe, stable, structured home for the minors. [¶] It is, therefore, the strong recommendation of the social worker that the minors' placement in the home of the paternal grandparents be continued until such time as the parents have both completed the court ordered reunification plan."

At the disposition hearing, the testimony of the grandmother and the mother of the minors was consistent with their statements contained in the reports of the social worker. The grandmother told the juvenile court the minors had spent most of their time in her home. The mother testified the minors lived with her most of the time. The mother did not believe that, if the children remained with the grandmother, she would ever reunify with them. According to the mother, the grandmother would "sabotage" the mother's relationship with her children.

The mother told the court the grandmother "was very forceful all the time, she wanted her way." The grandmother telephoned the mother three or four times daily, insisted on transporting the children to school, and brought food and prepared meals to the mother's home. According to the mother, the grandmother also bought expensive clothes for the children. The mother attempted without success to discuss the problems she had with the grandmother.

Both Robert and Rachel testified at the disposition hearing. Robert told the court his mother sometimes did not prepare meals for the minors or wash his clothes. According to Rachel, her grandmother brought the minors meals because their mother did not do so. Her grandmother took the minors to school because their parents could not do so. Rachel also testified her

grandmother would telephone them in the morning so that Rachel could get up to make breakfast because her mother did not fix breakfast.

Following the disposition hearing, the juvenile court adjudged the minors dependents and ordered them continued in out-of-home placement. The court also denied continued placement with the grandmother. In rendering its decision, the court made the following comments: "Now, I know the children want to go live with Mrs. Minor. But this Court must follow the law. [¶] The law says the probation officer shall give primary—this is to be followed by the Court. [¶] The probation officer shall give primary consideration to recommending to the court that the minor be placed with a relative of the minor if such placement is in the best interests of the minor and will be conducive to family reunification. [¶] Under 361.3 that language is repeated. [¶] I don't think Ms. Minor has any—I have not heard any problems that make her unfit to have these children. [¶] And clearly if we were at the permanent planning stage where reunification was not a consideration, there is no question, absolutely no question in my mind that they'd be living with Mrs. Minor. [¶] But it will also be unquestioned that Mrs. Minor is a very strong woman. [¶] And she's strong in her denials when she might have admitted little things. . . . [¶] If I were a gambling man, I'd doubt that Mr. [L.] is every [sic] going to reunify with the kids. [¶] Some day in the future you may have a relationship with them. [¶] There is a possibility that Mrs. [L.] could, but there would have to be some dramatic change in her. [¶] It won't happen if the children lived with Mrs. Minor. She has seen herself as a savior for these children. If she gets them, she will have saved them from their parents. [¶] Let me quote you the language of one particular case speaking about reunification: [¶] The object of dispositional hearings is to find a temporary caretaker who will meet the child's physical and psychological needs while cooperating in reunification efforts. [¶] Now in this particular case they denied placement with the foster family and placed with a relative. And they remarked: [¶] A relative who presumably has a broader interest in family unity is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child. The exact opposite is true here. The tighter they get with Mrs. Minor, the less likely that they will ever have any need to explore the relationship with their mother, let alone reunify. [¶] So I feel actually compelled by law to deny placement with Mrs. Minor."

### DISCUSSION

### I

The minors make three contentions. First, they claim the juvenile court erred in refusing to permit testimony by the minors about their placement

preference. They also assert the court abused its discretion by failing to follow the procedure outlined in section 361.3. Finally, the minors argue the evidence is insufficient to support the court's order denying continued placement of the minors with their grandparents. Respondent agrees with the position of the minors in this case and joins the minors in seeking reversal.

Section 361.2, subdivision (b)(1) provides: "When the court orders removal pursuant to Section 361, the court shall order the care, custody, control, and conduct of the minor to be under the supervision of the probation officer who may place the minor in any of the following: [¶] (1) The home of a relative, including a noncustodial parent."

Section 361.3 provides in part: "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. In determining whether such a placement is appropriate, the probation officer and court shall consider the ability of the relative to provide a secure and stable environment for the child. Factors to be considered in that assessment include, but are not limited to, the good moral character of the relative; the ability of the relative to exercise proper and effective care and control of the child; the ability of the relative to provide a home and the necessities of life for the child; which relative is most likely to protect the child from his or her parents; which relative is most likely to facilitate visitation with the child's other relatives and to facilitate reunification efforts with the parents; and the best interests of the child. . . . [¶] (c) For purposes of this section: [¶] (1) 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated. [¶] (2) 'Relative' means an adult who is a grandparent, aunt, uncle, or sibling."

Subdivision (b) of section 361.2 applies at the disposition phase, when the minor may be removed from parental custody. (§ 361.) ■ The "object of dispositional hearings is to find a temporary caretaker who will meet the child's physical and psychological needs while cooperating in reunification efforts. A relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child." (*In re Baby Girl D.* (1989) 208 Cal.App.3d 1489, 1493 [257 Cal.Rptr. 1].) Under section 361.3, it is proper to consider relatives for placement even after disposition, so long as reunification efforts are ongoing. (*In re Jessica Z.* (1990) 225 Cal.App.3d 1089, 1098-1100 [275 Cal.Rptr. 323].)

We have found no decision reviewing the juvenile court's denial of a request to place minors with a relative, nor one which considers the appropriate standard of review to apply to such placement issues. In *In re*

*Corienna G.* (1989) 213 Cal.App.3d 73, 82-83 [261 Cal.Rptr. 462], the appellate court rejected the appellants' contention that the juvenile court had failed even to consider placing the minors with maternal grandparents. In *In re Andrea G.* (1990) 221 Cal.App.3d 547, 556-557 [270 Cal.Rptr. 534], the appellate court rejected a claim that a relative placement was "inappropriate." In *In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1184-1187 [279 Cal.Rptr. 406], this court considered what action was sufficient to constitute a "request" for placement under section 361.3. *In re Jessica Z., supra,* and *In re Baby Girl D., supra,* were concerned primarily with the timing of such requests.

## II

■　There are many rulings that are committed to the discretion of the trial court. The standard of abuse of discretion applies to a broad range of decisions, including such procedural matters as whether to grant a continuance (*Kuck* v. *McConnell* (1918) 39 Cal.App. 266, 267-268 [178 P. 533]), admit or exclude evidence (Evid. Code, § 352), dismiss a complaint (*Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1026 [213 Cal.Rptr. 712]), impose sanctions (*Morgan* v. *Southern Cal. Rapid Transit Dist.* (1987) 192 Cal.App.3d 976, 981 [237 Cal.Rptr. 756]), or grant a new trial. (*Paskil* v. *Leigh Rich Corp.* (1959) 171 Cal.App.2d 488, 490-491 [340 P.2d 741].) The standard also governs the availability of specific types of judicial relief, such as issuance of an injunction. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].)

The abuse of discretion standard also controls the disposition of certain substantive issues, such as various questions arising in family law disputes. (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 357 [236 Cal.Rptr. 543].) Whatever the issue concerned, the standard presumes deference to the trial court. Such deference makes sense where the issue usually involves primarily factual disputes. In its emphasis on deference, the abuse of discretion standard is similar to the substantial evidence rule.

■　Where the ruling that is the subject of appeal turns on the trial court's determination of disputed facts, the appropriate standard of review on appeal is "sufficiency of the evidence." Evidence is sufficient if there is "substantial" evidence to support the ruling. Such evidence "must be reasonable in nature, credible, and of solid value. . . ." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].)

Sometimes it is difficult to distinguish between application of the sufficiency of the evidence standard and the abuse of discretion standard. In

*Stack* v. *Stack* (1961) 189 Cal.App.2d 357, 368 [11 Cal.Rptr. 177], the court observed "[w]e find no authority distinguishing between insufficient evidence and abuse of discretion. It would seem obvious that, if there were *no* evidence to support the decision, there would be an abuse of discretion. But we do not think that it follows that there can be no abuse of discretion if there be any evidence to support the decision. It is certainly true that there could be a case where the decision is obviously not for the best interests of the child, even though there is some evidence to support it. We think that a number of the cases cited in this opinion, in which an order was reversed, fall into this category." (Quoted in *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 86-87 [98 Cal.Rptr. 501]; see also *Sanchez* v. *Sanchez* (1961) 55 Cal.2d 118, 126 [10 Cal.Rptr. 261, 358 P.2d 533].)

The sufficiency of the evidence standard usually is applied to test evidence supporting a judgment. Rulings other than judgments ordinarily are reviewed for abuse of discretion. However, some decisions have applied the sufficiency of the evidence rule to a decision on a factual matter. (See, e.g., *Torres* v. *Union Pac. R. R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825].) Moreover, consistent with the observation noted above in Stack, in some cases the courts have applied both standards. (*Johns* v. *City of Los Angeles* (1978) 78 Cal.App.3d 983, 990 [144 Cal.Rptr. 629] [abuse of discretion to order new trial based on juror misconduct if no substantial evidence supports finding of bias]; *West* v. *Lind* (1960) 186 Cal.App.2d 563, 566 [9 Cal.Rptr. 288] [discretion to order preliminary injunction upheld if factual determinations supported by substantial evidence]; Cal. Civil Appellate Practice (Cont.Ed.Bar 1985) § 4.14, p. 72.)

It is difficult to define precisely what is meant by "abuse of discretion." (*People* v. *Russell* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794].) One old but still quoted definition of this standard is stated in part as follows: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424, quoted in *Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 807 [137 Cal.Rptr. 434]; see also *Smith* v. *Smith* (1969) 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282].)

In *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193], our Supreme Court declared that ". . . a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice." More recently, the Supreme

Court has stated that a trial court's discretion is not "unfettered" but must be " ' "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 [228 Cal.Rptr. 190, 721 P.2d 71], quoting *Martin* v. *Cook, supra*, 68 Cal.App.3d 799.)

In an area analogous to the relative placement issue—custody and visitation orders—the appropriate standard is abuse of discretion. (*Foster* v. *Foster* (1937) 8 Cal.2d 719, 730 [68 P.2d 719]; *In re Marriage of Carlson* (1991) 229 Cal.App.3d 1330, 1337-1338 [280 Cal.Rptr. 840].) "The reviewing court must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling. [Citation.] The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child. [Citation.] We are required to uphold the ruling if it is correct on any basis, regardless of whether it is the ground relied upon by the trial judge. [Citation.]" (*In re Marriage of Carlson, supra*, 229 Cal.App.3d at p. 1337.) The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent "a manifest showing of abuse." (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 208 [259 P.2d 656].)

We are persuaded that the abuse of discretion standard should be applied to the review on appeal of the juvenile court's determination regarding relative placement pursuant to section 361.3. Such a determination, like decisions in custody cases, involves primarily factual matters and a judgment whether the ruling rests on a reasonable basis. As we have suggested, evaluating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. (Cf. *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 592 [153 Cal.Rptr. 423, 591 P.2d 911]; *Johns* v. *City of Los Angeles, supra*, 78 Cal.App.3d at p. 990.) Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' [Citations.]" (*Smith* v. *Smith, supra*, 1 Cal.App.3d at p. 958.)

"The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred." (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1298 [255 Cal.Rptr. 704].) The scope of discretion lies in the particular law to be applied. (*Id.* at p. 1297.)

III

Having determined that the abuse of discretion standard is the appropriate one to apply to the relative placement statute, we consider the

juvenile court's decision denying continued placement of the minors with the grandparents using that standard. From the court's comments, it is apparent that the court's concern was the possibility the grandparents might obstruct reunification. We are persuaded that concern is wholly speculative and therefore lacking any reasonable basis in the record.

■ Subdivision (a) of section 361.3 requires an assessment of the ability of the relative to provide a "secure and stable environment" for the child. In making that assessment, the court should consider a variety of factors. Among them are the ability of the relative to exercise proper care of the child, to provide an adequate home, and to facilitate reunification with the child's parents. However, the "best interests of the child" is the linchpin of the analysis.

■ As all parties in this case recognize, the grandparents have provided proper care for the minors, regardless of whether the minors have lived with them or with their parents most of the time. Although the record does contain some evidence that the grandparents' past adversarial relationship with the parents might make reunification more difficult, nowhere does the record contain evidence the grandparents would obstruct reunification efforts. On the contrary, the social worker reported that "[t]o date, the paternal grandparents have been completely cooperative with this worker and with Child Protective Services. They have brought the minors to visitations without argument; they have met with the social worker and others on behalf of the minors; they have made arrangements for the children's schooling; and they have, in every way, demonstrated their willingness to do whatever is asked of them." Moreover, it is clear from the record of this case that both parties to this appeal—the agency and the minors—support placement of the minors with the grandparents.

■ The primary purpose underlying dependency proceedings is the protection of the child. (*In re Kerry O.* (1989) 210 Cal.App.3d 326, 333 [258 Cal.Rptr. 448].) ■ From our review of the record in this case, we are persuaded that the minors' paternal grandparents will satisfy the minors' needs and, despite the history of conflict between the grandparents and the minors' parents, cooperate in reunification efforts. (*In re Baby Girl D., supra,* 208 Cal.App.3d at p. 1493.) Acknowledging that the juvenile court is accorded broad discretion in these kinds of disputes, we conclude that, under the circumstances of this case, that discretion was abused, resulting in a miscarriage of justice. (Cf. *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 877 [7 Cal.Rptr.2d 277].) Our resolution of the relative placement issue in this case renders it unnecessary to consider the minors' remaining contentions.

## DISPOSITION

The order denying placement with the minors' paternal grandparents is reversed, and the matter is remanded to the juvenile court for a new order granting such placement. In all other respects, the dispositional orders are affirmed.

Sims, Acting P. J., and Nicholson, J., concurred.