Filed 2/25/13  In re Justin V. CA

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re JUSTIN V., a Person Coming Under the Juvenile Court Law. | B242145<br>(Los Angeles County<br>Super. Ct. No. CK86485) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LINDA L.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Philip Soto, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Stephen D. Watson, Senior Associate County Counsel for Plaintiff and Respondent.

## INTRODUCTION

L.L. (mother), the mother of minor J.V. (the minor), appeals from the juvenile court's disposition orders removing custody of minor from mother and requiring monitored visitation with the minor to take place in a therapeutic setting. According to mother, there was insufficient evidence to warrant removal and the order requiring a therapeutic setting for visitation was an abuse of discretion.

We hold that there was sufficient evidence to support the juvenile court's removal order and that the order requiring a therapeutic setting for visitation was not an abuse of discretion. We therefore affirm the disposition orders from which mother appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 2011, the Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300[1] alleging, inter alia, that father and mother had subjected the minor to emotional abuse due to an ongoing custody dispute between the two. That same day, the juvenile court found a prima facie case, detained the minor, and released him to mother. The juvenile court ordered no visitation for father, but gave DCFS the discretion to liberalize that order to monitored visitation in a therapeutic setting. The juvenile court also ordered an Evidence Code section 730 evaluation of father, mother, and the minor.

On April 5, 2011, the juvenile court sustained the allegation in paragraph c-1 of the petition alleging that father and mother had emotionally abused the minor. The juvenile court declared the minor a dependent of the court, removed him from father's custody, released him to mother, ordered family maintenance services, individual counseling, and conjoint counseling with the minor for mother. The juvenile court also

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

ordered individual counseling for the minor and reunification services and monitored visits for father.

On or about October 3, 2011, Dr. Sandra Hah, a psychiatrist, submitted to the juvenile court her Evidence Code section 730 evaluations of father, mother, and the minor. Dr. Hah provided the following diagnoses and recommended treatments: "1. As to the minor, the data is consistent with a diagnosis of Anxiety Not Otherwise Specified and Mood Disorder Not Otherwise Specified. He clearly suffers from anxiety and mood dysregulation related to parental conflict and the uncertainty of custody arrangements. Additionally, a diagnosis of Post Traumatic Stress Disorder is a possibility. [¶] 2. As to the mother, the data is consistent with a diagnosis of Generalized Anxiety Disorder and Post Traumatic Stress Disorder, although allegations of domestic violence have not been verified. [Mother] minimized some of the symptoms so she did not meet full criteria for a diagnosis of Major Depressive Disorder but it is a possibility. [¶] 3. As to the father, his history is consistent with a diagnosis of Alcohol Abuse although Alcohol Dependence cannot be ruled out. In addition, [father] has issues with anger and hostility which are significant, although there is no formal diagnosis of such. [¶] 4. The minor, [J.V.], would benefit from either individual psychotherapy, play therapy, cognitive behavioral therapy, or a combination of all three. If his anxiety or mood symptoms worsen, he may benefit from antidepressant medications such as selective serotonin reuptake inhibitors (SSRI's). Additionally, the minor should continue to have regular social activities with peers and access to positive role models and mentors, both male and female. Finally, it would be helpful for the minor to be in family counseling with his mother and/or father to facilitate working through situations of intense conflict and to help establish healthy boundaries between mother and minor, and father and minor. [¶] 5. The mother, [L.L.], would benefit from individual psychotherapy and more regular attendance at her current domestic violence support group. Additionally, it may help her feel more empowered as a single parent to take parenting classes, particularly ones that are more focused toward setting personal boundaries with children and decreasing enmeshment. [Mother] should continue to seek peer friendship and support (as she has found in church groups), and

3

minimize isolation of herself and her son. Finally, it is recommended that [mother] attend co-parenting therapy with the father, [J.V.], to address issues of extreme hostility and conflict, so they can positively and cooperatively rear their child, [J.V.]. [¶] The father, [J.V.], would benefit from an outpatient alcohol treatment program or a group, such as Alcoholics Anonymous, as well as individual psychotherapy. If his drinking behavior worsens, as intensive inpatient treatment facility would likely be the most appropriate form of alcohol treatment. It is also recommended that he enroll in anger management classes, in particular ones with special attention to domestic violence issues. It is also recommended that [father] attend parenting classes that have a focus towards re-establishing trust and connection with a child. Finally, [father] is recommended to engage in co-parenting therapy with the minor's mother, [L.L.]. As stated above, the objective of this therapy is to work through high conflict and hostility in order to learn how to co-parent the minor, [J.V.], in a healthy and positive manner."

On March 29, 2012, DCFS filed a section 387[2] petition alleging that the "previous disposition had not been effective in the protection or rehabilitation of the [minor]." Specifically, DCFS stated the following in paragraphs s-1 and s-2 of the petition: "s-1. The child's mother [L.L.] created a detrimental home environment for the child [J.V.] by emotionally abusing the child. Such emotional abuse consisted of, but is not limited to, the continued custody issues, visitations for the father [J.V.] and the continuing disparagement of the father and other maternal relatives to the minor, to the extent that the child has been emotionally isolated from the father and other relatives. Such conduct

---

[2]    Section 387, subdivisions (a) and (b) provides: "(a) An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private or county institution, shall be made only after noticed hearing upon a supplemental petition. [¶] (b) The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3."

on the part of the child's mother [L.L.] places the child at substantial risk of suffering serious emotional damage as evidenced by severe anxiety, depression and withdrawal that the child displays. [¶] s-2. On numerous occasions, the child's mother [L.L.] has displayed mental and emotional problems including, Post Traumatic Stress Disorder. Further, on prior occasions the child's mother [L.L.] has not provided continuous Mental Health services for herself or her son. Due to the mother's limitations, the mother is unable to provide regular mental health care for her son. Such mental and emotional condition on the part of the mother endangers the child's physical and emotional health and safety and places the child/children at risk of future physical and emotional harm and damage."

In the accompanying March 29, 2012, detention report, a childrens'social worker (CSW) explained the reasons for the section 387 petition as follows: "This family came to the attention of DCFS on 11/17/2010 when a day referral alleged the [minor] was placed on a [section 5585] hold. [The minor] was hospitalized on a [section 5585] hold on 11/17/2010, for reporting not wanting to visit father and would kill himself or father and was diagnosed with major depression. Prior to discharge, [the minor] was taken from the hospital/Alhambra BHC by mother against medical advice on 11/21/2010. The family has had 17 prior investigations with the department and a Voluntary Family Maintenance Case with the department. All of the family's prior referrals with DCFS . . . relate [to] the parents conflict with one another. Mother and father have been divorced for the past 10 years. During this time the parents have been in battle with one another utilizing the Family Law Court System which has been detrimental to the [minor's] well being. [¶] Mother has continued to be resistant to mental health services both for herself and her son. [The minor] has met with Department of Mental Health [(DMH)] staff Ms. Keyondria Bunch PhD., yet only in the presence of . . . mother. [The minor] continues to report that he is scared of . . . father and that father will hurt him. Numerous attempts have been made to link [the minor] and mother with services. Previously, mother has stated that she does not wish to receive services through DMH, instead she previously wanted to take [the minor] for treatment at Glen Roberts Child Study Center where she

5

reported to have been denied in November due to insufficient medical coverage. CSW and DMH have also tried to refer mother to full Service Partnership yet mother refuses in home services. Department of Mental Health continues to express concern for [the minor] with strong recommendation that mother and [the minor] follow through with mental health assessment and treatment. Measures are to be taken to ensure this follow through with continued Department of Children and Family Services to ensure that the [minor] is in a stable, consistent, and supportive environment that will support and facilitate continued mental health treatment, attendance in school, and appropriate choice in [the minor's] daily functioning. Family law court appointed [the minor's] attorney Sandra Etue reported ongoing child alienation issues on behalf of mother and [the minor] reporting to her on many occasions to be fine with visiting with father and reporting understanding that mother does not want [the minor] to visit with father or any other member of her own family. Mother has alienated herself and the [minor] from all maternal family members for perceived slights and alienation with the father. Mother's alienation of these family members has eliminated valuable family support to [the minor], who previously ha[d] good existing relationships with [his] [maternal grandfather] and uncle. Mother's continued anxiety and paranoia has caused the [minor] undue stress, confusion and symptoms of depression. This has caused vicarious traumatization to the [minor] and places him at risk for several mental health distortions and cognitions requiring intensive mental health intervention. As to the Family Law Court minute order dated 02/01/2011, Family Law Court found that it is not in the [minor's] best interest to exclude father from [the minor's] life."

At the March 29, 2012, detention hearing, the juvenile court found that DCFS had made a prima facie case for detaining the minor and showing that a substantial danger existed to the physical and emotional health of the minor. The juvenile court further found that there were no reasonable means to protect the minor without removal from mother's home, that reasonable efforts had been made to prevent or eliminate the need for such removal, and that continuance in mother's home was contrary to the minor's welfare. The juvenile court detained the minor, removed him from mother's custody, and

6

ordered him placed with any suitable relative. The juvenile court also ordered monitored visitation for mother and father with a DCFS approved monitor.

In the May 18, 2012, jurisdiction/disposition report, a CSW reported that she interviewed mother who told her the following: "Mother stated that she does not isolate the minor. Mother stated that she refuses to allow father to have contact with the minor due to his past actions and behaviors. Mother stated that she believes that her relatives are on father's side and therefore has refused to allow them to have contact. Mother stated that she had only allowed her brother [J.L.] minimal contact. [¶] Mother stated that she did acquire mental health services for the minor, but had difficulties due to confusion about insurance and her inability to continue to pay for services on her own. Mother states that she does not have any mental health issues that she needs to address."

The CSW also interviewed father and provided the following: "Father stated that mother has progressively increased the minor's isolation from father and the entire family since the minor's birth. Father states that he believes that mother has increased the isolation because the minor is getting older and is starting to ask more questions about why he cannot see his family. Father reported that the activities that mother allows the minor to participate in involve mother's constant presence. Father shared that he is concerned about the mental state of the minor and hopes that the minor can get the help that he needs. [¶] Father stated that mother has had mental health issues for nearly a decade. Father reported the several judges in Family Law court ordered mother to participate in mental health services. Father stated that he believes that mother is refusing to allow the minor to receive mental health services because then mother would begin to lose her control over the minor."

According to the CSW: "Mother and father continue to have a caustic relationship despite the apparent anxiety and depression the minor is experiencing. Despite the detention and placement of the minor, mother continues to deny any mental health issues that she may have or that the minor may have. This fact is concerning with regard to the history that mother presents in only superficially acquiring mental health services for the minor. Additionally, during monitored visitation mother disparages father, the current

7

caregiver, maternal uncle [J.L.] and the maternal grandfather. Mother also—despite repeated attempts at redirection from the CSW and DCFS monitors—continued to tell the minor that at this court hearing the minor will return to her care. This combination of remarks makes the minor visibly upset and causes the mother and minor to argue and become frustrated with one another during the visits. [¶] Father continues to exhibit inappropriate anger towards the mother, [the] minor and this CSW. Mother reports that father is leaving threatening voicemail on . . . mother's home phone. Mother has yet to supply the voicemail and therefore DCFS cannot confirm. Father had stated that he 'will go to the Jim's (caregiver) business and demand to see the [minor] if visits are not set-up.' These acts continue to frighten the minor and cause the minor to grow only more distant from the father."

In a May 18, 2012, last minute information for the juvenile court, a CSW reported that mother initiated individual counseling in April 2012 and had attended four sessions. The CSW further reported that mother had also enrolled at a counseling center and attended eight sessions of parenting classes.

At the May 18, 2012, jurisdiction/disposition hearing, the juvenile court continued the hearing to June 5, 2012. In a June 5, 2012, last minute information for the juvenile court, a CSW reported that the minor had been referred to the Department of Mental Health for an assessment and referral to a service provider. An assessment was scheduled for June 7, 2012. As for mother, the CSW reported that mother continued to be enrolled in individual counseling and had completed her parenting course. The CSW also reported that mother visited the minor regularly but at times continued "to respond inappropriately to the minor's verbal and non-verbal signals as evidenced by mother's refusal to accommodate the minor's schedule in planning visitation. During visitation mother . . . continued to discuss case issues and continue[d] to disparage the current caregivers." Moreover, based on statements made by mother, the CSW believed that mother might leave the state with the minor.

At the June 5, 2012, jurisdiction/disposition hearing, the juvenile court admitted Dr. Hah's Evidence Code section 730 evaluations, the March 29, 2012, detention report,

8

the May 18, 2012, jurisdiction/disposition report, the May 18, 2012, last minute information, and the June 5, 2012, last minute information. The juvenile court also heard testimony from the minor and mother, as well as the arguments of counsel. The juvenile court then found the allegations in paragraphs s-1 and s-2 of the section 387 petition true and sustained the petition. As to disposition, the trial court found and ruled as follows: "Having found the petition true, I will again declare the minor a dependent under section 300 and find by clear and convincing evidence under WIC [section] 361[, subsection] (C) there's a substantial danger if the child were returned home to the physical health, safety, protection, or physical or emotional well-being of the child, and there's no reasonable means by which the child's physical health can be protected without removing the child from the parents' physical custody. [¶] Order that the minor be removed from the parents with whom the child resided at the time the petition was filed. Reasonable efforts were made to prevent or eliminate the need for removal from the home of the custodial parent. [¶] Suitable placement orders are to continue in full force and effect. Placement with the maternal uncle is approved of at this time. [S]o we'll go ahead and agree to have [the minor] placed there. The Department will have discretion to place with any appropriate relative. [¶] Case plans will be implemented for both mother and father as provided by County Counsel. Mother is advised that services need to be completed within the 12-month period, or if not, we could terminate reunification services and go to a permanency plan where a plan of adoption, legal guardianship, or long-term foster care could be implemented. [¶] If visits go out of the therapeutic placement and move into a monitored or unmonitored placement, mother is advised and warned that these visits are not to take place outside of the seven counties or southern California, and she's not to remove the child from the State of California or the United States without prior court approval. Doing so could lead to a custody warrant for the minor and possibly even an arrest warrant for the mother."

9

## A.    Standards of Review

Mother's challenge to the juvenile court's order removing custody of the minor from her is governed by a substantial evidence standard of review.  (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)  Under this standard of review, we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses.  (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)  We determine only whether there is any substantial evidence, contradicted or uncontradicted, that supports the trial court's order, resolving all conflicts in support of the determination and indulging all legitimate inferences to uphold the court's order.  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)  And we may not substitute our deductions for those of the trier of fact.  (*In re Katrina C.* (1988) 201 Cal. App. 3d 540, 547.)  When the standard of proof at the trial court is "clear and convincing evidence," the court's finding is upheld if there is substantial evidence to support the court's finding.  (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 [standard of clear and convincing evidence for trial court and "was not intended as a standard for appellate review"].)

Mother's challenge to the juvenile court's order requiring her monitored visits to take place in a therapeutic setting is governed by an abuse of discretion standard of review.  (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.)  "In an area analogous to the relative placement issue—custody and visitation orders—the appropriate standard is abuse of discretion.  (*Foster v. Foster* (1937) 8 Cal.2d 719, 730 [68 P.2d 719]; *In re Marriage of Carlson* (1991) 229 Cal.App.3d 1330, 1337-1338 [280 Cal.Rptr. 840].)  'The reviewing court must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.  [Citation.]  The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child.  [Citation.]  We are required to uphold the ruling if it is correct on any basis, regardless of whether it is the ground relied

10

upon by the trial judge.  [Citation.]'  (*In re Marriage of Carlson, supra*, 229 Cal.App.3d at p. 1337.)  The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent 'a manifest showing of abuse.'  (*Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 208 [259 P.2d 656].)"  (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

### B.     Removal from Mother's Custody

Mother contends that there was insufficient evidence to support the juvenile court's order removing custody of the minor from her.  According to mother, the evidence showed that nothing had changed since the juvenile court's original disposition order that gave custody of the minor to mother and therefore removal was not warranted.

The juvenile court removed custody pursuant to section 361, subdivision (c) which provides in pertinent part:  "(c)  A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6):  [¶]  (1)  There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody.  . . .  The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home.  The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."

There was evidence that circumstances had changed since the time of the original disposition order, which change warranted the removal order.  That evidence included Dr. Hah's evaluations, which provided that mother suffered from general anxiety and posttraumatic stress disorders and the minor suffered from anxiety and mood disorders.

11

According to Dr. Hah, mother and the minor both needed individual and conjoint counseling, but mother continually failed to attend counseling and failed to arrange it for the minor. There also was evidence that mother isolated the minor from father and her own relatives, conduct which was detrimental to the minor's anxiety and mood disorders. And, a CSW reported concerns that mother might take the minor out of state in order to avoid compliance with the case plan put in place at the original disposition hearing.

That evidence was sufficient to support a reasonable inference that continuing in mother's custody would be detrimental to the minor's emotional well being. There was evidence that despite having been afforded almost a year to comply with the case plan and obtain needed counseling for herself and the minor, mother refused to comply and denied needing any sort of counseling. There was evidence supporting the removal order as necessary to ensure that the minor received the recommended and court-ordered counseling and, given mother's refusal to comply with the case plan, there were no other reasonable means to protect the minor's mental health.

### C. Monitored Visits in Therapeutic Setting

Mother argues that the trial court abused its discretion when it ordered that her visitation with the minor take place in a therapeutic setting. According to mother, there was no evidence demonstrating that a therapeutic setting was necessary for visitation.

As discussed above, the juvenile court's visitation order is reviewed under an abuse of discretion standard. Under that standard, we conclude that a rational trier of fact could have concluded from the evidence that visitation in a therapeutic setting was in the minor's best interests. The evidence showed that, despite being afforded almost a year to obtain counseling for herself and the minor, mother continually refused to comply with that requirement in the original disposition order. Thus, the therapeutic setting requirement was rationally related to ensuring that the needed counseling would take place. There was also evidence, based on the CSW's concern, that mother might leave the state with the minor, and therefore the therapeutic setting was a rational means for preventing mother from absconding with the minor. And, the juvenile court granted

12

DCFS discretion to liberalize the conditions on visitation if mother demonstrated that she was willingly complying with the case plan. There was sufficient evidence to support the conclusion that the trial court did not abuse its discretion by ordering visitation in a therapeutic setting.

## DISPOSITION

The disposition orders of the juvenile court from which mother appeals are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

ARMSTRONG, Acting P. J.

KRIEGLER, J.

13