Filed 4/11/13  In re Ruby G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re RUBY G., et al., a Person Coming Under the Juvenile Court Law. | D062856 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CYNTHIA G.,<br><br>        Defendant and Appellant. | (Super. Ct. No. NJ014260 A-E) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

The sole issue in this appeal is whether the juvenile court abused its discretion at the disposition hearing by not placing the children with the maternal grandparents and instead placing them with other relatives.  We find no abuse of discretion and thus affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*First Dependency Case*

In late 2009, when Cynthia G.'s five children were between eight months and 11 years of age, the San Diego County Health and Human Services Agency (the Agency) removed them from the home of the maternal grandparents, where the family was living, and filed petitions on their behalves under Welfare and Institutions Code section 300, subdivision (b).[1] The petitions alleged the father was under the influence of heroin in the home, drug paraphernalia was found in the home, and the parents were unable to provide regular care for the children.[2]

The Agency's jurisdictional and dispositional report states: "Law enforcement found methamphetamine pipes, uncapped syringes and heroin in the residence. The home was 'filthy.' The health and safety of [the children] were endangered by the parents' illicit substance use and close proximity of the drug paraphernalia to the children. The home was found to be unsanitary/unhealthy for the children. The father was determined to be under the influence of heroin." He admitted chronic drug use. Cynthia denied her own drug use, but admitted smoking marijuana in November 2009. The parents were arrested for child cruelty, and the father, who was on parole for drug and theft related convictions, faced additional charges.

---

[1] Further statutory references are also to the Welfare and Institutions Code.

[2] The father is not involved in this appeal.

The court sustained the petitions and continued the matter of disposition. Later, the court removed the children from the father's custody and placed them with Cynthia.

In the Agency's report for the six-month status hearing, it recommended the termination of jurisdiction on the grounds the maternal grandparents' home had been cleaned up, and Cynthia had completed parenting classes and was in individual therapy. The father was in and out of jail and admitted he had not participated in any of his case plan services.

At the hearing, the court declined to terminate jurisdiction on the ground Cynthia had not met her treatment goals. A few months later, however, the court did terminate jurisdiction.

*Second Dependency Case*

In July 2012 the Agency again filed petitions on behalf of the five children under section 300, subdivision (b). They alleged the parents had a history of drug use and parental neglect; beginning the preceding month they used drugs, specifically heroin, and had been arrested for being under the influence[3]; they were in possession of controlled substances and drug paraphernalia; and the children lacked adequate supervision. Four of the petitions contained another count, which alleged the family home "was in a state of severe filthiness and insanitariness."

The Agency reported that for two years the family had been living "in a dilapidated trailer" on the property of a paternal relative and the children "wander around

---

3        Cynthia testified the charges against her were dismissed.

the property without supervision and are being neglected." The youngest child was found in the middle of a street crying, while Cynthia slept inside the trailer. Drugs and drug paraphernalia were found inside the trailer, within reach of the children. The trailer smelled of urine and was filthy, and there was no bed only a "small mattress that was stained, wet and very flimsy."

The evidence conflicted as to whether the children had been living in the trailer or with the maternal grandparents. The social worker concluded "it is apparent the children have been living [primarily] in this trailer for over two years" with the exception of the eldest child, a daughter.

The Agency also reported, "[m]aternal grandparents are a strong support for the family but seem to be used at parent's discretion. . . . Maternal grandparents are aware of the parents' drug addiction and have failed to take steps to ensure the children's safety." The Agency nonetheless initially detained the children with the maternal grandparents.

In its report for the jurisdictional and dispositional hearing, the Agency noted the children had been removed from the maternal grandparents' home and placed with the maternal great uncle and great aunt. The report notes Cynthia, "stated the ultimatum that the parents would, 'Give up our parental rights' and demanded that the maternal grandparents [be] given custody of the minors." The social worker advised Cynthia that the Agency had concerns about the suitability of the maternal grandparents to care for the children and thus they would be allowed only supervised visitation.

The report also states Cynthia minimized "the severity and seriousness of the parents' drug use and denies the issues of neglect that brought the family to the Agency's

4

attention, instead shifting blame and reasoning that the parents were recently 'framed and stuff was planted in the trailer.' "  The Agency again devised service plans for the parents.

An addendum report by the Agency states:  "[W]hen this worker confronted the maternal grandfather about concerns that the maternal grandparents allowed the minors to be alone with the parents while the parents were under the influence, the maternal grandfather acknowledged that the parents have drug abuse issues and that the maternal grandparents have left the minors with the parents unsupervised.  [¶]  The maternal grandparents have had extensive experience with the father's drug use and criminal history.  It is reported that the father, the mother and the minors have lived on and off with the maternal grandparents since the father was fourteen.  [¶]  The maternal grandparents have had firsthand experience with the father's long drug and criminal history."

The report elaborated as follows:  "The maternal grandparents have a long history of allowing the minors to be exposed to the dangers of the father's and the mother's illegal drug use and drug involvement in their own home and also during time the minors have recently spent with parents.  [¶]  It appears that the maternal grandparents are incapable of adequately protecting the minors from the dangers as a result of the parents' drug use and involvement.  [¶]  It also appears that the maternal grandparents have knowingly allowed the minors to be placed in dangerous situations in spite of the maternal grandparents' knowledge of the mother and father's history of drug use and its negative effects upon the parents' care of the minors and ensuring their safety and well-being.  [¶] It is of grave concern to the Agency that placement of the minors with the maternal

5

grandparents will result in another instance consistent with the parents' pattern of exposing the minors to harm and danger as a result of the parents' drug use and involvement."

In an addendum report filed just before the hearing, the Agency advised that Cynthia failed to appear for her first three scheduled drug tests. She appeared for the fourth test, and tested presumptively positive for amphetamines, methamphetamines, opiates and morphine. The Agency's opinion remained the same concerning placement with the maternal grandparents. They had "recently disclosed that they have seen the mother use at their own kitchen table in the past."

At the jurisdictional and dispositional hearing, Cynthia testified that when this proceeding commenced the children were living with the maternal grandparents and not with the parents in the trailer. She also denied that the drug test results were accurate. She said she was not currently using drugs and accused the social worker of having "a personal vendetta . . . against me and my husband."[4] She denied ever using drugs around her children or parents.

As to disposition, Cynthia testified she would like the children placed with the maternal grandparents, because "[t]hat's where they always lived." She said she would obey any order denying her visitation at their home and she would not pressure them to allow unsupervised visits.

---

[4]    The court gave Cynthia the opportunity for a continuance so she could "do discovery on the positive test," but she declined.

The maternal grandmother testified she had always provided for the children and wanted them to live with her. When asked whether she would abide by any order denying the parents visitation, she responded, "I'm willing to obey, but the judge has the power to make them comply as well." She was then asked: "Would you be willing to inform the court if you believe that either the mother or the father were under the influence of drugs when they visited the children?" She responded, "That's a very hard question because—well, I feel dumb, but to this day I don't know what a person who is under the influence of drugs is supposed to be like."

The parties stipulated that if called, the eldest child would testify that when the new petitions were filed she and her siblings were living with the maternal grandparents; the maternal grandparents did not condone the use of drugs, and she believed that if the parents were using drugs, the maternal grandparents would not allow contact; there were no secrets between her and the maternal grandparents; she and her sibling felt safe with and wanted to live with the maternal grandparents; and she had never seen her mother use drugs or, to her knowledge, under the influence of drugs.

The social worker explained why the Agency was opposed to placement with the maternal grandparents, as stated in its reports. The social worker recommended continued placement with the maternal great uncle and great aunt, because they provided structure and consistency and were able to "set boundaries and rules." In the social worker's opinion, the eldest child liked living with the maternal grandparents because "she doesn't have rules [there] and they don't ask where she's going and they're not observing and keeping a schedule or strict structure."

7

The court rejected Cynthia's testimony on where the children were living as not credible. It assumed jurisdiction over the children, removed custody of the children from their parents and continued their placement with the maternal great uncle and great aunt. The court explained, "the maternal great uncle is in a much more aware and proactive position to recognize people who are not maintaining sobriety and to take the appropriate steps in a timely fashion." The court ordered services and liberal visitation for the parents.

## DISCUSSION[5]

Cynthia contends the court abused its discretion by not placing the children with the maternal grandparents. We readily disagree.

"The purpose of the California dependency system is to provide maximum safety and protection for dependent children, and to ensure their physical and emotional well-being." (*T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 42-43.) "When a child is removed from parental custody, the child's relatives are given preferential consideration for placement, whenever possible." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1055; § 361.3, subd. (a).) "Before a child may be placed in a relative's home, the social worker must visit the home to assess the appropriateness of the placement." (*In re Esperanza C.*, *supra*, at p. 1055*;* § 361.4, subd. (a).)

---

[5] The children's appointed appellate attorney agrees with the Agency's position.

The abuse of discretion standard applies "to the review on appeal of the juvenile court's determination regarding relative placement pursuant to section 361.3. Such a determination . . . involves primarily factual matters and a judgment whether the ruling rests on a reasonable basis. . . . . [E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. [Citations.] Broad deference must be shown to the trial judge. The reviewing court should interfere only " ' "if we find that under all the evidence, viewed most favorably in support of the trial court's action, *no judge could reasonably have made the order* that he [or she] did." ' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067, italics added.)

In making its assessment, "the court should consider a variety of factors. Among them [is] the ability of the relative to exercise proper care of the child, to provide an adequate home, and to facilitate reunification with the child's parents." (*In re Robert L., supra,* 21 Cal.App.4th at p. 1068.)

Here, ample evidence supports a finding the maternal grandparents are unable to exercise proper care of the children, or provide an adequate home. The maternal grandparents knew about the parents' drug use for many years and even witnessed both parents taking drugs in the family home, yet they left the children with the parents unsupervised. The first dependency case commenced when the father was found under the influence of drugs in the maternal grandparents' home, and drug paraphernalia littered the parents' bedroom. The parents used drugs, and possessed drug paraphernalia in the trailer they were living in when the second proceeding commenced, and the children

9

lived there or spent substantial time there, yet the maternal grandparents did not intervene. Further, the maternal grandmother conceded she could not tell when the parents were under the influence of drugs. The court reasonably found it unlikely the maternal grandparents could protect the children from potential future drug use by the parents, a substantial risk given their histories of drug abuse. Indeed, even without deference to the court's ruling it borders on the absurd to claim abuse of discretion.

We also disagree with Cynthia's assertion the placement with the maternal great uncle and great aunt constitutes abuse of discretion. The jurisdictional and dispositional report advised the court of the change in placement, and that the maternal great uncle was in the process of making necessary medical and dental appointments for the children. The children appeared appropriately bonded to these relatives. Further, the maternal great uncle and great aunt reported no problems in the home, they facilitated parental visitation, and they were willing to provide the children with a permanent home should the parents not reunify with them. The social worker also testified as to the suitability of the maternal great uncle and great aunt, in that they provided structure and consistency and were able to "set boundaries and rules," and the children were relaxed in the home and thriving. The children's trial counsel agreed the maternal great uncle and great aunt are suitable caretakers. The court noted it listened carefully to the "very experienced" social worker's testimony and determined its decision was in the children's best interests, the paramount consideration in relative placement.

Moreover, Cynthia did not argue the unsuitability of the maternal great uncle and great aunt. Rather, she argued her preference for the maternal grandparents. " 'As a

10

general rule, a new theory may not be presented for the first time on appeal unless it raises only a question of law and can be decided based on undisputed facts.' " (*In re V.F.* (2007) 157 Cal.App.4th 962, 968.)

## DISPOSITION

The judgment is affirmed.


                                                                    McCONNELL, P. J.

WE CONCUR:


BENKE, J.


McINTYRE, J.


11