Filed 3/17/15  P. v. Yamamoto CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW SCOTT YAMAMOTO,<br><br>    Defendant and Appellant. | C075550<br><br>(Super. Ct. No. 62117851) |

Defendant Matthew Scott Yamamoto pleaded no contest to oral copulation of a person under the age of 18 (Pen. Code, § 288a, subd. (b)(1)),[1] attempted unlawful sexual intercourse with a minor more than three years younger than defendant (§§ 664/261.5, subd. (c)), sexual penetration by a foreign object of a person under the age of 18 (§ 289, subd. (h)), and conspiracy to obstruct justice (§ 182, subd. (a)(5)).  The trial court sentenced defendant to an aggregate term of four years eight months and ordered him to register as a sex offender for life under section 290.

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court abused its discretion in ordering him to register as a sex offender for life. He argues there is insufficient evidence that registration "is necessary to protect the public" from his committing sexual offenses in the future. We disagree and affirm the judgment.

## BACKGROUND

On January 14, 2013, defendant, a high school teacher, was charged with numerous counts of sexual abuse of two minors and other crimes. Defendant's victims were both students at the school where defendant was teaching when the crimes were committed. The People charged defendant with two counts of oral copulation of a person under 18 years of age (counts one and two), two counts of attempted unlawful intercourse with a minor more than three years younger than defendant (counts three and four), two counts of sexual penetration by a foreign object of a person under the age of 18 (counts five and six), four counts of child molesting—two victims (counts seven through nine and sixteen), two counts of communication with a minor with intent to commit an unlawful offense—two victims (counts ten and fifteen), meeting with a minor for the purpose of engaging in certain lewd and lascivious behavior and going to the arranged meeting place (count eleven), dissuading a witness from reporting a crime (count twelve), attempting to dissuade a witness from giving testimony in a legal inquiry (count thirteen), conspiracy to obstruct justice (count fourteen), and violation of a restraining order (count seventeen). Defendant pleaded no contest to counts one, three, five, and fourteen. In exchange, the remaining charges were dismissed with a *Harvey* waiver.[2]

Prior to sentencing, the probation department (the department) issued a sentencing report (the department's report) recommending a jail term equal to the time defendant had already served, five years of probation, and lifetime registration as a sex offender.

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

Appended to the department's report were letters from both of defendant's victims, each asking the court not to punish defendant with lifetime registration as a sex offender.

A psychological assessment was attached to the department's report and indicated defendant was a "low" risk, requiring "minimum supervision or non-reporting supervision." Andrew Stout, who performed that assessment, however, also prepared a "professional override" and determined that despite the results of the assessment, defendant was a "very high" risk. Stout indicated he was exercising his discretion to override the results of the assessment because "[t]he defendant's case is high profile, and involved minor victims."

Defendant submitted his own psychological evaluation, prepared by Eugene P. Roeder, Ph.D. Dr. Roeder evaluated defendant and determined him to be "introversive, passive, conventional, unimaginative, dependent and mildly depressed, with a tendency toward isolation and withdrawal. The personality testing is particularly noteworthy in that it does *not* present him as antisocial, narcissistic, impulsive, predatory or in any way dangerous or exploitive. . . .

". . . [Defendant] is clearly not a pedophile, nor someone who has an abnormal or unnatural sexual interest in children in general or in his alleged victim. He instead presents on the evaluation as a passive, introverted and socially challenged individual who allowed both his emotional feelings and his sexual desires to override his judgment in engaging in behavior which he knew was wrong and criminal. The psychological evaluation results indicate he has an excellent prognosis for succeeding in treatment, and as a result his likelihood of reoffending is low. While the issue of whether [defendant] should be required to register as a sex offender is more of a legal than a psychological determination, the psychological evaluation results indicate his low level of dangerousness, his non-exploitive or manipulative personality, his absence of any elements of sociopathy or victimization, his amenability to treatment, and his limited likelihood of reoffending all indicate that registration as a sex offender would not be

3

necessary. [Defendant] presented on the evaluation as clearly extremely remorseful, with a strong desire to make things right, and his prognosis for future success, and to avoid future difficulties, is seen as particularly positive."

At sentencing, the trial court found defendant ineligible for probation and sentenced him to an aggregate term of four years eight months in state prison. The court exercised its discretion and ordered defendant to register for life as a sex offender. In so doing, the court stated: "in order for the Court to exercise discretion, the Court recognizes that a purpose of 290 registration is to notify members of the public of the existence and location of sex offenders so they can take protective measures.

"In order for the Court to exercise discretion, I must be mindful of a couple of factors. I have to make a determination as to whether or not the offenses were as a result of, first, sexual compulsion or for purposes of sexual gratification. . . . The Court thus finds that given these facts alone, and the additional facts contained within the record, that sexual compulsion or for purposes of sexual gratification is a factor that is found to be true.

"Secondly, the Court also looks at the reasons for requiring lifetime registration as a sex offender. In order to look at this particular factor, I have looked at the very reasons of significant public safety concerns here. There is more than one victim in this matter. In order to protect our daughters, society should know, society should be aware of the whereabouts of [defendant] at all times. Therefore, I am imposing the lifetime registration pursuant to Penal Code Section 290 as well, in the Court's exercise of discretion, for the reasons stated herein."

## DISCUSSION

Section 290.006 gives the trial court discretion to require sex offender registration for persons convicted of offenses not enumerated in section 290, which requires mandatory registration for specified offenses. (See also *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197 (*Hofsheier*).) Discretionary registration may be ordered "if the

4

court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006.) The premise behind sex offender registration legislation is that "sex offenders pose a 'continuing threat to society' . . . ." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) As such, one of the purposes of the registration requirement is " ' " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' " ' [Citations.]" (*Hofsheier,* at p. 1196; see also *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 78 (*Lewis*) ["the purpose of sex offender registration is to keep track of persons likely to reoffend"].) An alternative purpose for sex offender registration is "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*Hofsheier,* at p. 1196.)

In *Hofsheier*, the California Supreme Court described the process to be applied by lower courts when exercising discretion to order lifetime sex offender registration under section 290.006: "[T]he trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier, supra*, 37 Cal.4th at p. 1197.)

"By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Hofsheier, supra*, 37 Cal.4th at p. 1197.) In exercising its discretion under the second prong of the *Hofsheier* analysis, the trial court should "consider all relevant information available to it at the time it makes its decision." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 483,

5

disapproved on other grounds by *People v. Picklesimer* (2010) 48 Cal.4th 330, 338-339, fn. 4.) One relevant inquiry is whether the defendant is likely to reoffend in the future. (*Garcia*, at p. 485 ["information regarding the defendant's behavior since the time of his original sentencing certainly is relevant to the determination as to the likelihood he will reoffend and the necessity for registration"]; see also *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431.)

Defendant does not argue that the trial court erred in finding his crimes were committed for the purpose of sexual gratification. Rather, defendant complains the trial court abused its discretion in ordering him to register as a sex offender for life because there was insufficient evidence he would reoffend.

We review the trial court's ruling for an abuse of discretion. (See *Lewis*, *supra*, 169 Cal.App.4th at p. 79.) A trial court abuses its discretion if it applies an incorrect legal standard when making its decision. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) If the trial court applies the correct legal standard, "[b]road deference must be shown to the trial judge. The reviewing court should interfere only ' "if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." [Citations.]' [Citation.]" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The trial court's ruling will be affirmed unless it is "arbitrary, capricious or patently absurd." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

Here, the trial court knew it had the discretion not to impose sex offender registration and correctly identified the legal standard by which that discretion was to be exercised. The court then stated it was imposing registration because "[t]here is more than one victim in this matter."

Defendant argues that the existence of multiple victims is not sufficient evidence defendant may reoffend. In support of his claim, defendant relies on the expert's opinion that he was not a pedophile and was at low risk of reoffending. "A trial court[, however,] is not required to accept even unanimous expert opinion at face value. [Citation.] As

6

long as the decision to reject such testimony is not 'arbitrary,' the trial court may reject the conclusion of an expert. [Citation.]" (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1345.)

The trial court's decision to reject the expert's opinion was not arbitrary. When there is more than one victim, and the crimes are separated in time, it implies a pattern of conduct. When an historical pattern of conduct is shown, it is not unreasonable to infer that conduct will repeat itself in the future. (See *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1157; *id.* at pp. 1163-1164 ["Notwithstanding the nuances of psychiatric diagnosis and the difficulties inherent in predicting human behavior, the United States Supreme Court has consistently upheld commitment schemes authorizing the use of prior dangerous behavior to establish both mental impairment and the likelihood of future harm."].)

Moreover, as noted by the trial court, defendant took advantage of his position of trust as a teacher when he abused these two students. And despite the victims' not feeling "victimized," they were minors and sexual crimes against minors are criminal offenses that are generally registerable offenses. (*Lewis*, *supra*, 169 Cal.App.4th at p. 78 ["The registerable crimes listed in section 290, subdivision (c) may be characterized generally as sexual offenses committed . . . against minors . . . ."].) These victims are therefore in the class of people protected by section 290. Accordingly, on this record, we cannot say the trial court's determination was arbitrary, capricious, or patently absurd.

## DISPOSITION

The judgment is affirmed.

                                                                             _____RAYE_____, P. J.

We concur:

_____MURRAY_____, J.

_____HOCH_____, J.

7