Filed 6/6/16  In re A.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | C080242 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.G., <br><br> Defendant and Appellant. | (Super. Ct. Nos. JD226307, JD226308, JD236095) |

T.G., mother of minors A.J. and N.J., appeals the juvenile court's orders granting father custody of the minors and terminating jurisdiction.  (Welf. & Inst. Code, §§ 362.4, 395; all further section references are to this Code.)  She contends the juvenile court's exit order providing her with one supervised visit with the minors per year was an abuse of discretion.  We affirm.

1

Mother has six children–Gl.C. (born circa 2000) Ga.C. (born circa 2001), A.J. (born 2005), N.J. (born 2003), T.C. (born 2008) and Z.J. (born 2011).  The instant case commenced in 2014 when then 11-year-old N.J. gathered up the courage to report her mother's ongoing physical abuse to law enforcement.  At that time, mother's two oldest children, Gl.C. and Ga.C., were living with their father and were not made part of the current proceedings.  Although T.C. was a subject of the current proceedings, mother's issue on appeal does not relate to that minor.   Mother was provided weekly visitation with T.C. and mother raises no other issue with respect to the exit order for that child.  Accordingly, we dismiss the appeal as to minor T.C.  Additionally, this appeal does not involve mother's youngest child, Z.J., who was placed with his father and whose case was not transferred to Sacramento County.  This appeal involves only the juvenile court's exit order with respect to minors A.J. and N.J.

On November 1, 2014, mother called before coming home and asked N.J. if the house was clean.  When she was told it was not, she announced she was going to "whoop all your asses when I get there."  When mother came home, she made A.J., N.J., and T.C. all line up for lashings with a vacuum cord–each receiving 15 to 20.  N.J. secretly recorded seven minutes of the beatings on her cell phone.  When mother left to get pizza, N.J. called 911.  She reported that mother gives at least one of the children a "whoopin" every night and N.J. had "had enough."  Mother was arrested for child abuse.

Section 300 petitions were filed in Contra Costa County on behalf of all four minors (A.J., N.J., T.C., and Z.J.), based on mother's ongoing physical abuse and general neglect.  The social worker reported mother had been the subject of 29 referrals to child welfare agencies between 2000 and 2014, and she had previously received reunification services through Sacramento County, eventually reunifying with her children.

At the January 8, 2015, contested jurisdiction hearing, the juvenile court found the allegations made against mother true.  Minors A.J. and N.J. were in foster care

placement.[1]  The juvenile court ordered visitation for the minors' father and ordered that mother may have supervised visits for one hour, two times per month.

By the time the social worker prepared the March 12, 2015, disposition report, mother had attended two supervised visits with the minors.  She had refused to sign the agency's visitation agreement and did not confirm visits prior to visiting.  A.J. and N.J. were resistant and nervous about having to visit mother but seemed to enjoy the visits once they occurred.

Mother did not attend the April 20, 2015, dispositional hearing.  The juvenile court declared the minors A.J. and N.J. dependents of the court, placed them with their noncustodial father in Sacramento County under court supervision, and ordered reunification services for mother.  The juvenile court also provided mother with weekly one-hour supervised visits.

A hearing was held on May 28, 2015, to discuss mother's case plan and the possible transfer to Sacramento County.  Mother did not attend the hearing.  The juvenile court restated that mother was entitled to a minimum of a one-hour supervised visit per week, along with supervised telephone contact.  The case was then transferred to Sacramento County, where the minors were residing.

The transfer-in hearing took place on June 30, 2015.  Mother appeared by telephone.  The Sacramento County juvenile court accepted the case and scheduled a dispositional hearing, which ultimately took place on September 3, 2015.  Mother did not attend the hearing.

The social worker reported in her August 20, 2015, addendum report that A.J. and N.J. were doing well in their placement with their father and recommended terminating

---

[1]    T.C. was also in foster care placement.  Z.J. was placed with his father.  As we have stated, this appeal does not involve T.C. or Z.J. and, therefore, we provide no further facts relating to these minors.

dependency. The minors had not visited mother since before March 12, 2015, when they were in foster care.[2] Mother had not participated in any of the ordered reunification services. The minors' attorney stated that the minors had stated that they wish to remain with their father and are not ready to have contact with mother, even in a supervised setting. Mother's counsel requested a "minimum" visitation be ordered.

The juvenile court found minors A.J. and N.J. no longer required court supervision, ordered sole legal and physical custody of the minors to their father, and dismissed dependency jurisdiction. In terms of visitation, the court authorized mother one supervised visit with the minors per year, to be supervised by a professional supervisor.

## DISCUSSION

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.]" (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.)

In making an exit order, the juvenile court must look to the best interests of the child under all the circumstances. (*In re John W.* (1996) 41 Cal.App.4th 961, 973.) The former emphasis on reunification is no longer the focus. (*In re K.C.* (2011) 52 Cal.4th 231, 236.) A visitation order is reviewed for abuse of discretion. The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent a manifest showing of abuse. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

---

[2] On July 18, 2015, A.J. reported that she had not had any telephone contact and had not seen mother for "seven months." The social worker, however, reported that mother had visited the minors twice between January 8 and March 12, 2015.

4

Here, mother did not attend the review hearing.  Through her counsel, she requested "minimum" visitation with the two older minors, A.J. and N.J., who had indicated they were not ready for visits.  Mother now contends the juvenile court's order of one supervised visit per year is an abuse of discretion.

In arguing the juvenile court abused its discretion, mother relies heavily on the fact that the juvenile court had provided for more frequent visitation during the reunification period and "there were no reported problems."  To the extent mother contends such previous orders are evidence of a lack of detriment or risk to the minors' safety should visitation occur, we note that the juvenile court was not required, in exercising its discretion, to make a finding of detriment or harm to the minors before denying mother visitation or contact.  Nothing in section 362.4, or relevant case law regarding section 362.4, requires a finding of detriment to deny visitation or contact in an exit order.

Moreover, although the juvenile court had ordered more frequent visitation in the past, mother did not actually visit the minors with any frequency in the past.  In fact, except for two visits prior to disposition, mother did not visit the minors *at all*.  Thus, the fact that there were "no reported problems" when more frequent visitation was ordered is meaningless.

Indeed, mother's failure to visit the minors when more frequent visitation was ordered strongly supports the juvenile court's exit order.  Although mother was not provided visitation prior to jurisdiction, she was provided supervised visits for one hour, twice a month, at the January 8, 2015, jurisdiction hearing.  Nonetheless, by March 12, 2015, mother had participated in only two visits–and she had not visited since.

On April 20, 2015, visitation was increased to one hour, once a week.  Mother did not visit.  On May 28, 2015, the juvenile court clarified its order, again stating mother was entitled to a one-hour supervised visit per week.  Mother did not visit.

Mother argues that these orders were "lost in translation" when the case was transferred to Sacramento County on May 28, 2015.  She also argues that perhaps the

5

county did not facilitate visitation because it was difficult to coordinate. Nonetheless, mother points to nothing in the record indicating she ever tried to exercise her right to visitation or seek clarification or enforcement of the juvenile court's orders–either before or after the transfer to Sacramento County. In fact, she refused to sign the visitation agreement. Further, she did not participate in any reunification services and refused to take responsibility for her actions, which lead to the dependency in the first place.

Based on mother's actions, or lack thereof, the minors and their needs were not a priority in mother's life. Because the minors were not mother's priority, the juvenile court could question whether an order for more frequent visitation would nurture the sort of relationship that could facilitate the minors' growth. In fact, from mother's previous conduct, the juvenile court could infer mother would continue to fail to attend visits, even if they were authorized more frequently.

Finally, the record indicates the minors were thriving in their placement with their father, despite the lack of visitation with mother for the past six months. Indeed, not only is there no evidence that the minors were suffering any detriment as a result of mother's lack of contact, they had, in fact, indicated that they were not ready to visit mother at all, even in a supervised setting.

Under the totality of present circumstances, the juvenile court's visitation order was not an abuse of its broad discretion. (*In re Robert L.*, *supra*, 21 Cal.App.4th at p. 1067.)

6

## DISPOSITION

The orders of the juvenile court with respect to minors A.J. and N.J. are affirmed. The appeal as to minor T.C. is dismissed.


                                                         NICHOLSON     , Acting P. J.


We concur:


      HULL            , J.


      BUTZ            , J.