Filed 2/13/25  In re B.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E084055 |
| Plaintiff and Respondent, | (Super.Ct.No. J294463) |
| v. | OPINION |
| C.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Cara D. Hutson, Judge. Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel and Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

A mother appeals a juvenile court's order reducing her visitation rights from unsupervised five-hour visits twice a week to supervised two-hour visits once a week after social workers discovered she had misrepresented her compliance with her reunification plan. We conclude the juvenile court did not abuse its discretion by reducing, without eliminating, visitations for that reason.

**I**

**FACTS**

On September 20, 2022, San Bernardino County Children and Family Services (the department) received an immediate response call on behalf of 22-month-old Bella H. Her mother and father were being arrested for burglary of items from a short-term rental home where they had been staying with another couple.

Detectives also found needles at the home but did not know who owned them. Mother told the social worker she last used marijuana in 2018 and denied using drugs at the time. Father acknowledged he used "meth" a couple times a week for four years, including the day before. One of their friends acknowledged using methamphetamine, said her partner used methamphetamine and marijuana, and said they had used the day before.

Both parents had lengthy criminal histories and prior child welfare referrals, many drug-related and three concerning Bella. A dependency involving mother's three older children had resulted in their being placed into guardianship with the maternal grandmother.

2

Bella was detained without a warrant and, two days later, the department filed a section 300 petition alleging the parents had substance abuse problems and extensive criminal histories, failed to provide Bella with appropriate dental care, and had been arrested, leaving Bella without provision for support. The petition also alleged mother had failed to reunify with Bella's half-siblings and her reunification services were terminated.[1]

At a detention hearing on September 26, 2022, mother denied the allegations, but the court found a prima facie case for detention and placed Bella in out-of-home care. The court ordered supervised visits at least once a week for two hours and set a jurisdiction/disposition hearing for October 17.

Mother told the social worker she had no substance abuse problem, and the maternal grandmother said mother had done drugs in the past but had been doing well since giving birth to Bella. However, the paternal grandmother told the social worker both mother and father were drug addicts. Father acknowledged using methamphetamines twice a week but said it did not interfere with his ability to care for Bella. Mother provided an on-demand drug screen, and it was negative for all substances. Mother also said she had been at her full-time job at an investment company for seven years, had been a licensed cosmetologist for 17 years, and earned $4,500 a month.

---

[1] Father is not a party to this appeal, so we will not detail the allegations and evidence about him.

On October 6, 2022, mother had her first visit with Bella. She brought snacks, a blanket, clothes, and toys and engaged appropriately with Bella. She responded to the child's needs by changing her diaper and offering her snacks or milk. She also was protective of the child and demonstrated empathy.

The court held a jurisdiction/disposition hearing on October 17, 2022. The department moved to dismiss the allegation about the negligent dental care. The court sustained the two counts alleging substance abuse by the parents and dismissed the other counts. The court also sustained the allegation that mother had a prior dependency case. The court removed the child from parental custody, ordered family reunification services for mother, and ordered supervised visitation twice a week for two hours. Mother's case plan included random drug testing, aftercare, an out-patient drug treatment program if she missed a test or tested positive, individual therapy, a parenting class, and conjoint counseling if the parents intended to be a couple.

At the six-month review hearing, mother appeared to be doing well. The department recommended continuing her family reunification services and indicated she was complying with her case plan services and visited the child regularly. The court ordered additional services for her.

At the 12-month review hearing on October 3, 2023, the department again recommended mother's reunification services be continued. The department said mother continued to comply with her case plan and had yet to complete only individual counseling. Mother had completed an out-patient drug program. Her drug testing results

4

were negative, albeit with three "no shows." Mother was required to attend aftercare and randomly drug test for the next six months.

In August, the court allowed mother to have unsupervised visits twice per week for three hours. The visits went well, and mother never missed a visit. At the department's recommendation, the court extended the unsupervised visits to twice a week for five hours and gave the department authority to begin overnight and weekend visits.

From October 3, 2023, to February 14, 2024, mother had unsupervised visits twice a week for five hours. In February, she requested a 29-day visit and the social worker requested a progress report from the aftercare program. At a February Child and Family Team Meeting (team meeting) mother reported she continued to attend her aftercare program and had tried to get a certificate of completion, but reported the program did not provide one.

However, the aftercare program sent a progress report in February and another in March that contradicted her account. They said mother had been terminated from the program in September 2023 for "poor attendance and poor participation" and enrolled again only on October 17, after 30 days of intensive services. However, at that point mother began testing positive for Buprenorphine, a prescription medication used to treat opioid dependence. The program asked mother to provide a prescription, which she did not do. Instead, she told the program the test result was caused by her antidepressant medication, though she said she had been taking the antidepressant medication the whole time.

5

At the team meeting, mother denied using any substances, claimed the test results were incorrect, and said new test results would resolve the issue. A department social worker told mother her visits would be reduced to supervised visits until the test results became available, but if they were false positives the visits could be reinstated as unsupervised. Mother agreed. The department also reduced visitation to two hours once a week.[2] From that point, mother's visits were supervised one time a week for two hours.

The next drug tests did not go well. In March, the lab reported mother twice provided nonhuman urine. Soon after, the treatment center terminated mother from the aftercare program again and recommended she enter an in-patient program. The department's drug and alcohol counselor reported that Buprenorphine, which is also called Suboxone, is available "off [the] streets" and mother's antidepressant would not cause a false positive for Buprenorphine.

At the initial 18-month review hearing on March 26, 2024, mother provided a letter from a clinician's assistant which explained mother's medication could produce a false positive if it interacted with other substances. On April 3, 2024, mother admitted she diluted her urine with fake urine because she panicked. She told the social worker she

_____

[2] Mother argues the social worker exceeded the department's authority by reducing the frequency and duration of her visits. The department did not have authority from the court to make those reductions at the February 2024 team meeting. We have, though, no indication that mother opposed the reductions at that meeting. More importantly, the reductions were not challenged at the initial 18-month review hearing in March 2024. They also were not challenged at the contested June 3, 2024, hearing. Mother now appeals the June 3, 2024, juvenile court order setting the reduced schedule. With the reductions unchallenged in trial court, the court did not abuse its discretion in making them.

should have used the fake urine alone. The department's drug and alcohol counselor reviewed the letter from the clinician's assistant and pointed out mother had never mentioned taking other substances and the issue could have been resolved if mother had not tampered with her urine samples.

At a contested 18-month review hearing on June 3, 2024, mother asked for additional reunification services, but the court terminated services. Bella was in a foster home with caregivers unwilling to adopt her. The court ordered mother's visits to be supervised and once a week for two hours. The court also authorized the department "to increase frequency and duration" of the visits and to delegate supervision.

## II

## ANALYSIS

Mother argues the order reducing her visits from twice a week for five hours to once a week for two hours was unsupported by the evidence, was not in the child's best interests, and violated her due process rights to avert termination of her parental rights.

Visitation with a parent shall be as frequent as possible consistent with the well-being of the child. (Welf. & Inst. Code, § 362.1.) Visitation should continue even after reunification services have been terminated and the child has been placed in long-term foster care. (*In re M.R.* (2005) 132 Cal.App.4th 269, 274.) The juvenile court has authority to modify the terms of the visitation orders. (*In re Megan B.* (1991) 235 Cal.App.3d. 942, 952.) The court may delegate management of the visitation details to

7

the social worker including time, place, and manner. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.)

The juvenile court has broad discretion in making visitation orders and we will not disturb such an order unless there has been a clear abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067) A court abuses its discretion only where it makes a decision that is arbitrary, capricious, or patently absurd. (*In re M.R.* (2017) 7 Cal. App.5th 886, 902.)

Here the change in the visitation order to supervised visitation was a reasonable response to a late revelation that mother had suffered a setback in addressing the drug abuse problems that led to the dependency and had failed to disclose her problem (if not misrepresented herself as having untarnished progress). Mother lost custody of her daughter in part because of her own use of narcotics. She told the department she was close to completing a treatment plan, which included an aftercare program. However, she did not disclose, and the department did not learn for months, that she had been terminated from her aftercare program for poor attendance and participation. While she underwent an additional 30 days of treatment and re-entered the aftercare program, that was not the end of the matter. Mother began testing positive for Buprenorphine, which can be used as an opioid substitute but is also available for sale on the street. For this reason, the department changed mother's visits to supervised visits one time a week for

two hours, a change mother did not oppose in a team meeting with the department and then did not challenge in trial court hearings.

Mother provided shifting and shaky explanations for the positive drug tests, before ultimately destroying her credibility by submitting fraudulent urine tests. Her deception could reasonably be interpreted as an effort to escape detection of her abuse of Buprenorphine.[3] This evidence provided the trial court a substantial and reasonable basis to conclude mother had failed to address her narcotics problem, raising the same concerns about returning Bella to her care as existed from the outset.

Under those circumstances, the juvenile court did not abuse its discretion by ordering her visits supervised and in reducing them from five hours two times a week to two hours one time a week. We note that the change from unsupervised to supervised visits (with mother's agreement after her positive tests) was readily justified. This does not mean that the reduction in the frequency and duration of the visits was necessarily warranted. But mother did not challenge the reductions in trial court at any point, so there is no basis for finding the trial court abused its discretion in imposing them. Since the changes, the department has had the authority to increase the frequency and duration of the visits, and mother has had the ability to seek a change from the court.

---

[3] Mother argues that she "was not abusing any substance that placed her under the influence." That conclusion is unsupported. While Buprenorphine is, as mother says, used to treat dependence on opioids, it does not follow that it has no other uses or that it cannot be abused. It is possible to obtain the drug illegally and without a prescription. Moreover, the treatment program terminated her aftercare program based on her use and efforts to cover it up. All this evidence provides a reasonable basis for inferring she was abusing a prescription drug.

Mother relies on *In re C.C.* (2009) 172 Cal.App.4th 1481 and *In re Hunter S.* (2006) 142 Cal.App.4th 1497 to support her argument that the order deprived her of meaningful visitation rights. However, both cases involved orders denying *any* visitation. The court's decision here appropriately preserved visitation, allowing mother to establish she visited consistently if, later in the case, doing so will aid her. (See *In re Caden C.* (2021) 11 Cal.5th 614, 632.)

We therefore conclude the trial court acted within its discretion in setting the new visitation order.

## III

## DISPOSITION

We affirm the June 3, 2024 order reducing visits.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.