Filed 5/18/16  B.K. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| B.K.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>    Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Real Party in Interest. | E065644<br><br>(Super.Ct.No. INJ1400429)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Susanne S. Cho, Judge.  Petition denied.

Denise E. Shaw for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, Julie Koons Jarvi, Deputy County Counsel for Plaintiff and Respondent.

**FACTUAL AND PROCEDURAL HISTORY**

On September 19, 2014, real party in interest Riverside County Department of Public Social Services (the Department) filed a Welfare and Institutional Code[1] section 300 petition on behalf of minors A.K., I.K. and Z.K. At the time the petition was filed, A.K. was 10 years old, I.K. was five years old, and Z.K. was three years old. The Department alleged that mother abused controlled substances, including but not limited to methamphetamine, and had recently been arrested for child endangerment and driving under the influence of methamphetamine.[2] Mother had a history of child protective services referrals and she tested positive for methamphetamine. Services were offered but mother refused treatment, which would have eliminated the need for further intervention by the Department. Neither father lived in the home.[3]

On September 22, 2014, the juvenile court detained the children. The court ordered visitation for mother and set a jurisdictional hearing. The children were placed in the home of a maternal cousin.

On October 10, 2014, the juvenile court found true the allegations in the petition. The court found that the children came within section 300, subdivisions (b) and (g). The children were adjudged dependents of the court. The children were removed from mother's care. Mother was provided with reunification services.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Mother was released from custody the same day she was arrested.

[3] A.K. had a different father than I.K. and Z.K.

On April 9, 2015, the court continued reunification services to mother.

On May 27, 2015, A.K. was held under section 5150 because he wanted to kill himself and threatened to stab his brothers. He was released on June 1, 2015, and prescribed medication. He saw a doctor on a monthly basis for depression.

I.K. was active and aggressive. He would hit and choke his brothers repeatedly. He was unable to get redirected by the caregiver or the social worker. He had Wraparound[4] screening for his inappropriate behavior. I.K.'s behavior improved after a Wraparound team became involved to help him with his behavioral issues.

Z.K. did not meet the qualifications for metal health services. He could express himself well. He was able to communicate his likes and dislikes. He was sad when he was unable to see mother for visits.

Mother resided in an inpatient rehabilitation center and completed the program on October 23, 2015. She visited the children and the visits reportedly went well, and the children were bonded with mother. Mother engaged the children and redirected them when needed. There was appropriate affection, and the children cried when they had to leave mother. A.K. and Z.K. visited mother twice a week, and I.K. visited once a week due to his school schedule.

On November 5, 2015, the juvenile court continued reunification services to mother.

---

[4] During the "Wraparound" process, a team of individuals who are relevant to the well-being of the child or youth (e.g., family members and other natural supports, service providers, and agency representatives) collaboratively develop an individualized plan of care, implement this plan, and evaluate success over time.

For the 18-month review hearing, the Department recommended that services to mother be terminated. The Department recommended that visitation be reduced to once a month. The permanent plan was identified as being legal guardianship.

Mother tested positive for amphetamines, methamphetamines, barbiturates, and cannabinoids on multiple occasions from November 2015 to January 2016. Visits were cancelled because of the positive drug tests; the last visit occurred on December 11, 2015. On February 8, 2016, mother was arrested for "robbery in the second degree, possession of tear gas, possession of a controlled substance, battery and petty theft." She had a criminal court date scheduled for March 22, 2016. Mother was incarcerated. Mother was not employed and received SSI for "paranoid schizophrenia." She was diagnosed with depression, anxiety, and schizophrenia and took various medications.

A.K. was placed on another section 5150 hold in December 2015 because he threatened to set a classmate's hair on fire. He was held over the weekend. In school, A.K. misbehaved in class, did not follow the rules, did not listen to instruction. However, he completed all his tasks. On January 21, 2016, A.K. was diagnosed with "Major Depressive disorder single episode moderate, ADHD and Oppositional Defiant disorder." A.K.'s caregiver gave a seven-day notice; he was moved to a foster home on January 29, 2016.

I.K. was developing normally, but sometimes it was hard for him to focus on a task for long periods of time. He played rough with his brothers and exhibited inappropriate behaviors towards them. He was influenced by his older brother to steal a family member's cell phone, but he returned the phone the same day. He was reportedly doing well in school. His behavior had improved and he was flourishing in placement.

Z.K. expressed himself well. He enjoyed playing with his brothers. He was too young to go to school.

On March 21, 2016, the juvenile court terminated reunification services. The court denied visits to mother and found them detrimental to the children while mother was incarcerated. When mother was released from custody, she would have a minimum of one supervised visit a month. A section 366.26 hearing was set for June 3, 2016.

On March 24 2016, mother filed a notice of intent to file writ petition.

**DISCUSSION**

In her writ petition, mother contends that the juvenile court abused its discretion when it denied her request for visitation with her children while she was incarcerated. For the reasons set forth below, we deny mother's writ.

The juvenile court has broad discretion in fashioning visitation orders, and the court's determination will not be disturbed absent a clear abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority

to substitute its decision for that of the trial court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

When a child is removed from parental custody, "the juvenile court shall order the social worker to provide child welfare services to the . . . mother . . . ." (§ 361.5, subd. (a).) An order placing a child in foster care and ordering reunification service shall provide for visitation between a parent and child consistent with the well-being of the child. (§ 362.1.) However, once reunification services are terminated, the focus of the dependency is on the child's interests in securing a safe and stable permanent home. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) In fact, "[t]he court shall continue to permit the parent or legal guardian to visit the child . . . *unless* it finds that visitation would be detrimental to the child." (§ 366.21, subd. (h), italics added.)

In this case, the children's counsel objected to mother's request for visitation. He stated: "As to mother's request for visitation, I would object. I would ask the court to not extend visitation to her while she is incarcerated. She is no longer—if the court follows the recommendation, she is no longer receiving reunification services. And given that these three boys have various behavioral and emotional issues, I think our focus needs to be really getting them stabilized as much as possible. If . . . and when the mother gets out of custody and re-avails herself of some programs, I think she can file a JV-180 to request visitation again. But at this time she has no statutory right to visitation as she is not getting services."

After hearing further argument from all parties, the court ordered the following: "While the mother is incarcerated in jail, the court will find detriment and order no visits for the mother. The mother has not had consistent visits with the children. The court finds emotional harm to see the mother when the intention is to do legal guardianship, and I don't think—although the jail itself is an issue, the fact is I don't think the child benefits from looking at the mother in jail not looking so good. I think it causes them more harm to see her in that state at this time.

"I'm going to allow the visits if mother is out of custody for one hour once a month supervised by the department or designee."

The trial court's ruling is not outside the bounds of reason. Here, mother had been testing positive, and several visits were cancelled prior to her arrest. Although mother was not arrested until February 8, 2016, her last visit with the children was December 11, 2015. The children were struggling in that A.K. had recently been placed on a section 5150 hold in December 2015, for threatening to set a classmate's hair on fire. On January 21, 2016, A.K. was diagnosed with "Major Depressive disorder single episode moderate, ADHD and Oppositional Defiant disorder." He had recently been separated from his brothers and placed in a different foster home because of his behavior. I.K. continued to have problems and was aided by the Wraparound team. Children's counsel objected to visitation with mother since mother was no longer receiving reunification services and because of the children's behavioral and emotional issues. Counsel stated that the focus needed to be on getting the children stabilized.

Based on the above, we cannot find that the juvenile court exceeded the bounds of reason in denying mother's request for visitation. Therefore, the juvenile court did not abuse its discretion in denying visitation while mother was incarcerated.

## DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                     J.

We concur:

HOLLENHORST _____
                Acting P. J.

SLOUGH _____
                J.