Filed 1/27/21  In re S.V. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.V., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E075192 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1900601) |
| v. | OPINION |
| C.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew Perantoni, Judge.  Affirmed.

Law Office of Marissa Coffey and Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory Priamos, County Counsel, James E. Brown, Anna M. Marchand, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant C.V. (mother) asserts that the juvenile court abused its discretion by terminating dependency jurisdiction with an exit order "indefinitely denying her visitation" with one of her children. In mother's view, the juvenile court had a duty to articulate the "conditions of when and how visitation should resume." Because the juvenile court had no such duty, we find no abuse of discretion and affirm.

## I. BACKGROUND

This dependency matter involves four boys: M.V., born in 2002; A.V., born in 2003; D.V., born in 2005; and S.V., born in 2010. In this appeal, however, only juvenile court orders relating to S.V. are at issue.

The children share the same mother, but S.V. has a different father. Mother is divorced from the father of the three older children. The father of S.V. was in a relationship with mother for about six months, they never married, and he reported that he only found out he had a child with her at the end of 2011. Neither of the fathers is a party in this appeal.

The children came to the attention of plaintiff and respondent Riverside County Department of Public Social Services (DPSS) in April 2019 when it received five reports alleging S.V. was being subjected to general neglect, sexual abuse, emotional abuse, and physical abuse by his father. After investigation, the matter was closed as inconclusive, with a finding that there is "insufficient evidence" of any abuse. S.V. made "inconsistent" and "extreme" statements describing abuse, which could not be corroborated with physical evidence. It was noted that mother "has a history of alleging

2

sexual abuse to the children, by the fathers of the children," and that although mother "appears genuine, emotional, and worried for the children's safety and well-being, she may have exaggerated the information shared by the child."

In August and September 2019, DPSS received another flurry of reports that S.V. was being abused by his father. Mother "shared a picture" of S.V. that she claimed showed scars on S.V.'s head from his father beating him with "a 'metal thing.'" She further claimed the father had taken S.V. for a weekend visit against S.V.'s wishes, and that afterward S.V. had attempted suicide by trying to jump out of a moving car, but someone in the car was able to stop him. DPSS reported it "was believed [S.V.] was hospitalized due to the incident." DPSS also received reports "from multiple reporting parties who [mother] talked to regarding the same allegations."

DPSS took the four children into protective custody on October 1, 2019. S.V. was initially transported to a "confidential placement," while the older three were released to the care of their father. In an amended dependency petition, DPSS alleged that each of the children came within Welfare and Institutions Code[1] section 300, subdivision (b) (failure to protect), and that S.V. also came within subdivision (c) (serious emotional damage). Regarding subdivision (b), the petition included the following factual allegations: "The mother suffers from unresolved mental health issues, including but not limited to diagnoses of Major Depression, Post-Traumatic Stress Disorder, Anxiety, and

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

Factitious Disorder Imposed on Another, which is limiting her ability to adequately parent the children, and is placing all of the children at risk of emotional harm." Regarding subsection (c), DPSS alleged: "[S.V.] is suffering from serious emotional damage due to the mother's mental health issues and behaviors, which includes coaching, conditioning, and training the child to make false allegations of severe sexual and physical abuse, and referring to him as a 'damaged child,' resulting in the child experiencing confusion, fear, anxiety, and [suicidal] ideation."

At the detention hearing, the juvenile court found that DPSS had established a prima facie case that each of the children came within section 300 as alleged. It did not detain any of the children from their fathers, nor did it detain the three older children from mother. The three older children expressed that they wanted to live with mother, and the court was persuaded to allow them to do so. The court ordered S.V. detained out of mother's custody and temporarily suspended her visitation with him, granting physical custody of him to his father.

At the jurisdiction and disposition stage, DPSS reported that S.V. was generally "safe and content in the care and custody of his father." When the social worker asked S.V. to write down his thoughts regarding "'good things,'" S.V. listed "'being with my dad, going to a new school, and being happier.'" S.V.'s father reported that the child had "opened up" and "talked about his mother forcing him to make false statements." When the social worker asked S.V. to write down things that worried him, he listed "'getting yelled at by my mom, and getting scared about what would happen (would my mom yell

4

at me).'" When asked to explain further, S.V. stated: "'Well, my mom would make me say stuff I didn't want to say. Things that were bad. I can't explain it because it was terrifying for me.'" S.V. then became too upset to discuss the issue further.

After a contested jurisdiction/disposition hearing on December 12, 2019, the juvenile court sustained the dependency petition as alleged. The court ordered the three older children to remain in the physical custody of their parents, and that the parents receive family maintenance services. The court removed S.V. from mother, but not from his father. It ordered mother to participate in reunification services as to S.V., and it ordered family maintenance services for his father.[2]

At the six month status review hearing in June 2020, the juvenile court terminated the dependency as to all four children. The three older children had been thriving while living with mother, and S.V. was doing well in the care of his father. The court did not issue any custody order regarding the oldest child, who was within days of turning 18 years old. The court ordered that mother share joint physical and legal custody of A.V. and D.V. with their father, with the details "to be arranged by mutual agreement of the parties." Mother did not, however, regain custody of S.V. Rather, the court granted sole legal and physical custody of S.V. to his father, finding that mother's progress "towards alleviating or mitigating the causes necessitating [his] placement" had been

---

[2] Mother's challenges to the juvenile court's jurisdictional and dispositional orders were raised in an earlier appeal, case number E074641. We address those arguments by separate opinion.

"unsatisfactory." The court denied mother visitation, finding that "it would be emotionally detrimental to [S.V.] if he were to have contact" with her.[3]

## II. DISCUSSION

Mother has not quite argued that the juvenile court abused its discretion by denying her visitation with S.V. Rather, she asserts that it erred by doing so "indefinitely" and "with no stated conditions on when and how [visitation] should be resumed."[4] She suggests that the juvenile court should have expressly incorporated into its exit order the recommendations regarding the resumption of visitation that were included in the report of a psychologist who examined S.V.[5] We are not persuaded that the juvenile court abused its discretion.

When a juvenile court terminates its jurisdiction over a dependent child, it "may issue . . . an order determining the custody of, or visitation with, the child," commonly

---

[3] The juvenile court's full statement on the issue was the following: "The Department is not to issue a visitation order for mother at this time, and that is because the Court finds that after review of the entire court file, the most recent report and the prior 730 evaluation previously reviewed by the court, that it would be emotionally detrimental to the minor child if he were to have contact with the mother. I would very much like to be able to establish contact with the brothers, but I'm being told by the professionals who have been involved with [S.V.], he's not ready for that and it would be emotionally detrimental to [S.V.] to establish that contact at this time. That really breaks my heart to have to issue that order, but I have to issue the order that the Court finds to be in the best interest of [S.V.]."

[4] DPSS argues that mother forfeited this argument by failing to raise it in the juvenile court. We find it more expedient to address the merits of the parties' arguments, assuming for present purposes that mother did adequately preserve the issue for appeal.

[5] The psychologist's recommendations included that mother's contact with S.V. be suspended for "no less than 16 weeks," and proposed a timeline for then resuming limited, supervised visitation.

6

referred to as an exit order.  (§ 362.4, subd. (a); *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.)  "Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court."  (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.)  We review such orders for abuse of discretion.  (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

The decision to modify a juvenile court's exit order is "within the province of the family court, and then only upon a finding of 'significant change of circumstances' and that the modification is in 'the best interests of the child.'"  (*In re Cole Y.*, *supra*, 233 Cal.App.4th at p. 1456 [quoting § 302, subd. (d)].)  The juvenile court may not intrude on the province of the family court by imposing conditions on the modification of its exit orders.  (See *In re Cole Y.*, at p. 1457 [reversing juvenile court exit order to the extent that it conditioned family court's ability to modify custody and visitation on father's completion of certain programs and counseling].)  Nevertheless, the juvenile court may include in its exit orders conditions on the parent to protect the child's well-being, the satisfaction of which would trigger the right to visitation without any action by the family court.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 213-214 [affirming visitation order providing father's visitation was "to be 'facilitated' by [the child's] therapist" and requiring father to first attend and make satisfactory progress, as determined by his therapist, in individual psychotherapy before he could begin visiting with the child].)

Thus, under *In re Cole Y.*, the juvenile court was not empowered to circumscribe the family court's discretion by defining when a change to the juvenile court's order

denying mother visitation may be made. Arguably, the juvenile court *could have* included in its orders certain conditions, perhaps based on the psychologist's recommendations, that would automatically trigger some form of visitation for mother, analogous to the orders affirmed in *In re Chantel S.* But there is no authority supporting mother's suggestion that the juvenile court was *required* to follow the *In re Chantel S.* model. To the contrary, we find it well within the bounds of reason for the juvenile court to have concluded, as it implicitly did, that it would be in the child's best interests to have the family court determine—based on the statutory standard and whatever evidence mother may be able to present—if and when the exit order should be modified to allow visitation, rather than attempting to define such a circumstance prospectively.

No doubt, it would be easier for mother if she only had to demonstrate that she had, say, completed certain programs or attended therapy for a certain number of weeks, and then visitation would resume. As things stand, she will have to satisfy the more amorphous standard of showing, to the satisfaction of the family court, that there has been a significant change in the circumstances that led the juvenile court to deny her visitation, and that beginning visits with her would be in S.V.'s best interests. (See § 302, subd. (d).) Nevertheless, there is no reason to suppose, as mother suggests, that this is an impossible burden to meet. The juvenile court found, based on the evidence before it, that it would be "emotionally detrimental" for S.V. to visit with mother, and that he was "not ready" for visitation with her *at that time*. If mother can produce new evidence, via expert opinion or otherwise, that these circumstances have changed, and

that now the child's interests would be best served by resuming contact with her, the family court may exercise its discretion in mother's favor.

In short, mother has demonstrated no abuse of discretion in the juvenile court's order denying her visitation for now and leaving entirely to the family court's discretion if and when her visitation with S.V. should resume.

## III.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

McKINSTER
           Acting P. J.

FIELDS
           J.