Filed 4/11/23  In re T.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re T.S., A Person Coming Under the Juvenile Court Law. | D080975 |
| SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent<br><br>    v.<br><br>T.S.,<br><br>    Defendant and Respondent;<br><br>T.N.,<br><br>    Intervener and Appellant. | (Super. Ct. No. J520794) |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Intervener and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Paternal grandmother T.N. (Grandmother) appeals from an order denying her request for placement of her grandson, T.S., under Welfare and Institutions Code[1] section 361.3 which provides that when a child is removed from his or her parent's custody, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative … ." (*Id.*, subd. (a).) Grandmother contends the San Diego County Health and Human Services Agency (Agency) delayed gathering information to begin her Interstate Compact for the Placement of Children (ICPC)[2] evaluation and this delay denied her a fair chance of being evaluated for placement.

From T.S.'s perspective as a child in the dependency system, the problem facing the juvenile court was a good one. T.S. was fortunate to have two equally loving, qualified, and committed relatives—one maternal and one paternal—from whom the court could choose when deciding on placement But it certainly didn't make the decision easier. Still, the court made its ruling to maintain T.S.'s placement with his maternal relative after considering the relevant section 361.3 factors, maintaining appropriate focus

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     The ICPC "is a compact among California and other states, the purpose of which is ' "to facilitate the cooperation between states in the placement and monitoring of dependent children." [Citation.]' [Citation.] Pursuant to the ICPC, no child shall be 'sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state … notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.' (Fam. Code, § 7901, art. (3), subd. (d).)" (*In re Suhey G.* (2013) 221 Cal.App.4th 732, 742.)

on T.S.'s best interests rather than the interests of the competing relatives. The evidence supports the juvenile court's determination that maintaining T.S.'s current placement with his maternal relative was in his best interests. We conclude this decision was well within the court's discretion and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In early July 2021, less than three months after T.S.'s birth, the Agency filed a petition on his behalf after D.B. (Mother) brought him to the hospital with severe injuries. When Grandmother learned of T.S.'s hospitalization, she traveled from her home in North Carolina to visit him in the hospital. She informed an Agency social worker that she was willing to have T.S. placed with her in North Carolina. The following month, the Agency moved T.S. to the home of a maternal cousin, Alicia R. (Cousin).

At the jurisdictional and dispositional hearing in early December 2021, the juvenile court made a true finding on the petition, removed custody from the parents, and denied them reunification services per section 361.5, subdivision (b)(5). At a pretrial status conference in late November 2021, Father's counsel informed the juvenile court about Grandmother's interest in placement and requested an ICPC evaluation be initiated. In early February 2022, the social worker called Grandmother to get information to fax to the Department of Social Services in North Carolina. In March 2022, Grandmother spoke to a North Carolina social worker.

In early April 2022, Grandmother appeared for the first time with retained counsel. Counsel expressed his intent to file a motion requesting the juvenile court divest itself of jurisdiction and place T.S. in the custody of a

---

3    Our summary of the facts and procedural history is limited to provide context relevant to the single issue presented in this appeal.

private adoption agency because both parents consented to Grandmother adopting him. The juvenile court found good cause to continue the hearing to further assess T.S.'s placement and entered an order that T.S. not be moved from Cousin without notice and an evidentiary hearing. In mid-May 2022, Grandmother's ICPC in North Carolina was approved. In June 2022, the Agency assessed Grandmother and Cousin under section 361.3.

In early July 2022, Grandmother appeared with counsel at the initial section 366.26 hearing. Counsel represented that Mother had revoked her consent to adoption and the matter would be set for a hearing on Grandmother's request for placement. In early August 2022, Grandmother informed the Agency that J.S. (Father) had been living at the paternal great-grandmother's home since July 2022, which was near her home. The Agency expressed concern that Father had video contact with T.S. during the paternal great-grandmother's video visits with T.S.

At a pretrial status conference in mid-August 2022, Grandmother's counsel expressed frustration with the Agency's recommendation not to place T.S. with Grandmother. He requested that the court continue the section 366.26 hearing and expressed his intent to file a JV-266 form, "which is a formal request for the court to review the Agency's decision not to place with my client." Counsel stated that he and the Agency "have done a dance about whether or not [Grandmother] need[ed] to file a [section] 388 [modification petition]." The court recessed to research the issue. After reviewing section 16519.5, the court found good cause to continue the section 366.26 hearing and set a hearing to review "the [Agency's] decision not to place [T.S.] with the [Grandmother]."

In early September 2022, the court held the section 361.3 special hearing. The Agency argued that because T.S. was already placed in a

relative's home, the juvenile court should interpret Grandmother's request as one for specific placement, which required a showing under section 388. It acknowledged that the approval of Grandmother's ICPC constituted changed circumstances. Grandmother's counsel claimed the Agency had the burden to show it did not abuse its discretion in denying placement with Grandmother. After consulting with the presiding judge and the legal department as to the process and procedures, the juvenile court determined that Grandmother did not need to file a section 388 petition to review the Agency's decision to not place T.S. with her.

The court heard testimony from Grandmother, Cousin, and the social worker. Cousin testified that "more than anything" she wanted "what is best for [T.S.], even if that brought heartbreak" to her and her children. Assuming T.S. would be safe and protected living with Grandmother in North Carolina, Cousin stated she "would never want to give [T.S.] away or have him taken" but if the Agency supported moving him "then I will honor what is decided [by] the court."

After hearing argument from all counsel, the juvenile court examined the section 361.3 factors and concluded "it [was] a wash … [f]actually, and legally, between [Grandmother] and [Cousin] … every one of these factors are equally balanced." It found both Cousin and Grandmother had the ability to ensure T.S. had a productive life, considering medical, educational, social and family dynamics. It also believed each would be protective, and both individuals would facilitate and nurture a relationship with both sides of the family.

The court ultimately determined that the analysis turned on T.S.'s best interests and that the Agency did not abuse its discretion. It concluded:

"With everything being equal in that regard, I cannot see how it would be in the best interest of [T.S.] to remove [him] from his current placement and send him to North Carolina. Because when it gets down to it, [he] is thriving. [T.S.] is thriving from his current care. He has familial relationships and the ability to maintain and grow a relationship with the other side of the family. It would be the same looking the other way. But where [T.S.] is, where [he] is right now, is stable. He's thriving. And it would be disruptive for no added value to change the placement. And there is no -- there are no winners and lose[r]s here because it is what it is. Everything under [section] 361.3 washes out because [Cousin and Grandmother] are both dynamic women who would do the right thing.

"I don't think that either side would do anything that would harm this child, and part of that analysis is the court finds there would be a bit of harm to change the placement because of the trauma, whether that would last for a month or a year. And it isn't necessary.

"So the court again finds … it is in the best interest of [T.S.] to remain in [his] current placement."

In mid-September 2022, the juvenile court held a contested section 366.26 hearing. It found T.S. adoptable, ordered him placed with the Agency for adoptive placement, found no exceptions to adoption existed, designated Cousin as the prospective adoptive parent, and terminated parental rights.

DISCUSSION

Grandmother contends the Agency abused its discretion when assessing her for relative placement because she sought placement of her grandson at the earliest time possible, before the detention hearing, but the Agency's delay in the approval process denied T.S. a fair chance to live with her. She complains the Agency waited until February 2022 to obtain information from her and its lack of timely effort regarding placement

6

resulted in an injustice. We conclude Grandmother forfeited this argument by failing to raise it in the juvenile court.[4]

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221.) "Forfeiture … applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*Id.* at p. 222.) Application of the forfeiture rule is not automatic, and a reviewing court has discretion to consider forfeited claims. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded on other grounds by statute as stated in *In re M.R.* (2005) 132 Cal.App.4th 269, 273–274.) But the "discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*Ibid.*; see *id.* at pp. 1293–1294 [excusing forfeiture to reach "an important issue of law: whether a juvenile court in a dependency case may delegate to the child's legal guardian the authority to decide whether a parent may visit the child"].)

Here, Grandmother testified that on July 5, 2021, she informed the social worker about her desire to care for T.S. The Agency placed T.S. with Cousin on August 27, 2021. On November 30, 2021, Father's counsel

---

[4]    The Agency believes the juvenile court engaged in the wrong analysis and should have viewed Grandmother's request as a section 388 petition for specific placement because T.S. was already placed with a relative. Review under section 388 requires a substantial change in circumstance and that the proposed modification would be in the child's best interests. (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.) Here, the Agency acknowledged a change of circumstance (approval of Grandmother's ICPC), and the lynchpin issue under section 388 would have been T.S.'s best interests. We decline to address this procedural issue because the juvenile court undertook a much more thorough analysis under section 361.3 that also turned on T.S.'s best interests.

requested an ICPC evaluation for Grandmother be initiated, but did not request that it be expedited.[5]  On February 1, 2022, the Agency contacted Grandmother to obtain information from her to provide to the department of social services in North Carolina.  Grandmother made her first appearance with retained counsel at the initial section 366.26 hearing on April 7, 2022. If Grandmother believed the Agency did not timely initiate the ICPC process, she could have raised this issue when she first appeared or at a subsequent hearing.  She failed to do so.

At the special hearing in September 2020, Grandmother did not claim prejudice based on the Agency's delay in initiating the ICPC process.  Had this issue been raised at the special hearing, the social worker could have testified about the Agency's ICPC procedures.  For example, the social worker could have explained what work, if any, the Agency did on Grandmother's placement request before it interviewed her on February 1, 2022.  Any alleged misfeasance by the Agency in not initiating the ICPC process sooner is not remediable at this late juncture.  Even if we credit Grandmother's allegations, the circumstances here do not outweigh the important policy reasons for the forfeiture rule, and we accordingly find her arguments

---

[5]    In certain circumstances, California dependency courts "may" designate a proposed interstate placement as an "expedited placement." (Cal. Rules of Court, rule, 5.616(h).)  An expedited process is available under ICPC regulation No. 7 where, among other things, the proposed placement is with a close relative, including a grandparent, and the child is under four years of age. (Cal. Rules of Court, rule 5.616(h)(2)(B).)  An order expediting placement requires that the ICPC administrator of the receiving state decide within 20 days as to whether the placement is approved. (*Id.*, rule 5.616(h)(5).)  Here, there is nothing in the record showing grandmother ever requested that the ICPC be expedited.

regarding the Agency's alleged delay in starting the ICPC process to be forfeited.[6]

Even if we considered Grandmother's delay argument on its merits, it took the department of social services in North Carolina about three and one-half months to approve the ICPC from the date the social worker interviewed Grandmother. Thus, even if the Agency had started the ICPC process in July 2021, when Grandmother initially expressed interest in having T.S. placed with her, it is highly unlikely that the ICPC would have been approved before the court placed T.S. with Cousin less than a month later in August 2021. Although the Agency's purported delay allowed T.S. more time to bond with Cousin, it is mere speculation that the result would have been different had the Agency started the ICPC process in July 2021 given that the juvenile court found "every one" of the relevant factors was "equally balanced" between the two relatives and the ultimate decision turned on its conclusion

_____

[6] To the extent Grandmother argues the Agency or the juvenile court unreasonably delayed in holding the section 361.3 hearing after North Carolina approved of her ICPC application, this issue is also forfeited based on her failure to raise this point in the juvenile court. In any event, the record does not support the argument. North Carolina approved Grandmother's ICPC on May 17, 2022, but there is nothing in the record to show she requested that the section 361.3 hearing be expedited. Grandmother appeared at the initial section 366.26 hearing on July 7, 2022, where her counsel informed the juvenile court that the matter would be set for a hearing on her request for placement. She made no request to expedite the hearing. At the next hearing on July 21, 2022, the juvenile court granted a 30 day continuance to discuss transitioning T.S. from his current placement with Cousin to Grandmother based on Cousin's consent to this change. Then at a pretrial status conference on August 19, 2022, Grandmother requested that the section 366.26 hearing be continued. She filed her request for review of the court's placement decision on August 31, 2022, and the juvenile court conducted its special hearing on the request the following day.

that it would not be in T.S.'s best interests to disrupt his current stable placement.[7]

The critical issue before the court was whether it was in T.S.'s best interest to be placed with Grandmother, not whether the delay in processing Grandmother's ICPC unfairly hindered her chances for placement. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 322 [juvenile court's failure to sufficiently consider placement with a relative earlier in the proceedings was irrelevant on whether placement with the relative was in the child's best interests at the time of the hearing]; see also *Los Angeles County Dept. of Children Etc. Servs. v. Superior Court (Paul C.)* (1998) 62 Cal.App.4th 1, 11–12 [Department's unreasonable delay in implementing ICPC for out-of-state caretakers had no legal connection to the Department's discretionary decision to place the child with other, in-state caretakers pending adoption].) Here, the juvenile court properly focused on T.S.'s best interests with respect to placement.

Section 361.3, subdivision (a) provides that a relative shall be given preferential consideration for placement when a child is removed from the parent's physical custody pursuant to section 361. In deciding whether to place the child with relatives, the court must consider a variety of factors including but not limited to the following: (1) the child's best interests; (2) the wishes of the parents, the relative, and the child; (3) the moral character of the relative and any others living in that home; (4) the length and quality of the relationship between the relative and the child; and (5) the relative's ability to provide a safe, stable environment for the child. (§ 361.3,

---

[7]    Although Grandmother argued at the special hearing that the Agency declined to recommend changing T.S.'s placement to her over concerns she would not protect him from Father, the juvenile court expressly found Grandmother would be appropriately protective.

subd. (a).) The standard of review for relative placement orders under section 361.3 is abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

After hearing argument from all counsel, the juvenile court found both Cousin and Grandmother had the ability to ensure that T.S. had a productive life, considering medical, educational, social and family dynamics. It also believed each would be protective, and both would facilitate and nurture a relationship with both sides of the family. It examined the section 361.3 factors and concluded they were evenly balanced between Grandmother and Cousin. Grandmother did not challenge this finding.

In the court's view, the analysis turned on T.S.'s best interests and it found the Agency did not abuse its discretion in evaluating this factor. The best interest of the child includes evaluating the child's "special physical, psychological, educational, medical, or emotional needs." (§ 361.3, subd. (a)(1).) Here, T.S. has been with Cousin since he was less than four months old. The court concluded he was "thriving" and "in a healthy, stable, nurturing environment" with Cousin; changing his placement would cause him trauma, and "would be disruptive for no added value." (See *In re A.F.* (2014) 227 Cal.App.4th 692, 704 ["The court should have been acutely aware that … the removal of *any* young children from the only caretakers they had ever known … risked causing them significant psychological damage"].) We conclude substantial evidence supported the juvenile court's finding it was not in T.S's best interest to move to North Carolina so that he could live with Grandmother.

As we have noted, the juvenile court here was called upon to make a difficult choice between two appropriate and loving homes for T.S. We are sensitive to Grandmother's anguish at the result and acknowledge her

11

undeniable argument that ICPC requirements can be "unfair to out-of-state relatives if the relative placement preference can be lost by the passage of time." (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.) But "[t]he overriding concern of dependency proceedings … is not the interest of extended family members but the interest of the child." (*Ibid.*) The best interest issue was thoroughly litigated, and we cannot conclude the juvenile court abused its discretion when it found that it was in T.S.'s best interest to remain in a stable and loving placement with Cousin.

## DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

BUCHANAN, J.

12